[Cite as *State v. Padilla*, 2012-Ohio-5892.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98187**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## VICTOR PADILLA

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-549476

**BEFORE:** Celebrezze, J., Blackmon, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 13, 2012

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road
Suite 300
Westlake, Ohio   44145


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    James D. May
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, Victor Padilla, challenges his convictions and sentence as a result of his guilty pleas to multiple counts related to his participation in an automobile theft ring. Appellant claims the state impermissibly withdrew a plea offer after he accepted it, and that the trial court failed to make necessary findings justifying the imposition of a maximum sentence of eight years for conspiring to engage in a pattern of corrupt activity. After a thorough review of the record and law, we affirm appellant's convictions and sentence.

I. Factual and Procedural History

{¶2} Appellant participated in an organized criminal enterprise formed to steal cars and sell them for parts. The enterprise targeted older model vehicles as a means of gaining parts to participate in street races. The targeted vehicles were stripped and parts were sold individually, often for greater sums than the cars were valued as a whole. The group's activity ranged throughout northeastern Ohio. On April 2, 2010, appellant drove Kelvin Pontajas and another member of the group to Akron intending for the two to steal a car and drive it back to Cleveland. Police officers discovered Pontajas in the stolen car, and a high-speed chase ensued. Pontajas approached speeds of 100 miles per hour while attempting to evade the police. Calvin McMahon happened into the path of the fleeing stolen vehicle and was struck and killed as he attempted to cross Interstate 77 on foot. Pontajas was also killed in the collision.

{¶3} Following this tragic incident, appellant and 34 others were secretly indicted on 258 counts on May 3, 2011. Appellant was arrested soon after. The portion of the indictment relating to appellant included multiple counts of theft, receiving stolen property, telecommunications fraud, fraudulent actions concerning a vehicle identification number ("VIN"), and tampering with records. The indictment also included two counts of conspiracy to engage in a pattern of corrupt activity (R.C. 2923.01(A)(1) & (A)(2)), one count of engaging in a pattern of corrupt activity (R.C. 2923.32(A)(1)) ("RICO"), and two counts of involuntary manslaughter (R.C. 2903.04(A)).

{¶4} Appellant was initially to enter a plea of guilty on November 14, 2011, as part of a proposed agreement reached with the state. However, sometime before the change of plea hearing, the state withdrew the offer. Although the full terms of the proposed agreement reached between appellant and the state were not made part of the record, it is apparent that the state and appellant arrived at a plea deal that did not include pleading guilty to two counts of manslaughter.

{¶5} On the record, appellant's attorney indicated that the parties had reached an agreement only to have the state withdraw the offer when a second district police lieutenant did not approve because it did not include two counts of involuntary manslaughter and, according to this lieutenant, appellant bore a great deal of responsibility for the deaths of McMahon and Pontajas. After the withdrawal, the trial court gave appellant and the state additional time to reach an agreement or go to trial. Appellant filed a motion to dismiss the two manslaughter counts, arguing that the deaths

occurred outside of Cuyahoga county and that they were not properly included in the indictment because they were not part of the pattern of criminal activity under the RICO count. The motion also indicated appellant gave statements aiding the police while plea negotiations were ongoing with the understanding that a plea agreement would be reached.

{¶6} After the trial court denied this motion on December 22, 2011, the parties did reach a plea agreement. On January 13, 2012, the state set forth the terms of the agreement on the record and appellant pled guilty to an amended indictment: One count of conspiracy to engage in a pattern of corrupt activity, in violation of R.C. 2923.01(A)(1); two counts of involuntary manslaughter, in violation of R.C. 2903.04(A); seven counts of receiving stolen property, in violation of R.C. 2913.51(A); and one count of grand theft, in violation of R.C. 2913.02(A).

{¶7} On February 28, 2012, the trial court conducted a sentencing hearing after reviewing a presentence investigation report. The court imposed an aggregate prison term of nine years: a maximum eight-year term for conspiracy, two 26-month terms for involuntary manslaughter, a one-year term for receiving stolen property to be served consecutively to the other terms, and concurrent 18-month terms for all other counts. The court also notified appellant of a three-year term of postrelease control and ordered restitution to several victims.

{¶8} Appellant now brings this appeal, raising two assignments of error:

I. The trial court erred in failing to enforce the original plea agreement between the state of Ohio and appellant.

II. The court erred in sentencing appellant to the maximum sentence on Count 2 of the indictment, conspiracy to engage in a pattern of corrupt activity.

## II.  Law and Analysis

### A. Enforcement of a Proposed Plea Agreement

{¶9} Plea agreements are essentially contracts between the state and a criminal defendant that must be accepted by the trial court before becoming effective.  As such, they are governed by ordinary contract principles.  *Puckett v. United States*, 556 U.S. 129, 137, 129 S.Ct. 1423, 173 L.Ed.2d 266  (2009).  As with many other contracts, a writing is not required to be enforceable, but a trial court may only accept a plea made in open court.  Crim.R. 11(F).  Therefore, implicit in every plea agreement is a method of acceptance.  *State v. Keyes*, 4th Dist. No. 05CA16, 2006-Ohio-5032, ¶ 7.

{¶10} Appellant now wishes to have specific performance of his proposed plea agreement.  The Supreme Court recognized that a criminal defendant is entitled to enforcement of a plea agreement that has been entered on the record and accepted by the defendant and the trial court.  *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).  However, that case does not address the precise situation here, where the plea agreement was never put on the record because the offer was withdrawn before the change-of-plea hearing could take place.

{¶11} Appellant had agreed to plead guilty to an amended indictment, but the details of that agreement are not contained in the record, nor were they in writing.  This lack of specificity places this court in an awkward position because to be enforceable the

terms of a plea agreement must be explicit. *United States v. Benchimol*, 471 U.S. 453, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985).

{¶12} Appellant argues that inherent in every contract is the duty to bargain in good faith. Where the state advances an offer that is accepted, the withdrawal of that offer violates that duty. This view is supported in *State v. Johnson*, 10th Dist. No. 80AP-449, 1981 Ohio App. LEXIS 10183, *4-6 (June 23, 1981). Citing *Santobello*, the Tenth District recognized that an offer, once made and accepted by the defendant, should not be unilaterally withdrawn by the state. However, the *Johnson* court also recognized that the trial court plays an important role in the process and has the ultimate authority to accept or reject the agreement. Therefore, it is within the trial court's discretion to allow the state to withdraw an offer or to have the offer enforced at the insistence of the defendant. *Johnson* at *9-11.

> While the trial court is obliged to use sound discretion in rejecting a plea-bargain agreement, this is a fundamental part of the administration of justice, and whether or not to accept a plea to a lesser crime or to impose a lesser sentence as agreed to by the prosecution in exchange for a guilty plea lies within the sound discretion of the trial court.

*Johnson* at *9. The *Johnson* court ultimately found that the trial court did not abuse its discretion when it did not enforce a plea offered by the state and tentatively accepted by the defendant.

{¶13} This issue has also been addressed in the federal courts in the context of constitutional rights to enforce a plea agreement.

> Relying on the Supreme Court's sanctioning of specific performance of a plea agreement breached by the state, the United States Court of Appeals

for the Fourth Circuit determined, in *Cooper v. United States* (1979), 594 F.2d 12, that "under appropriate circumstances — which we find here — a constitutional right to enforcement of plea proposals may arise before any technical 'contract' has been formed, and on the basis alone of expectations reasonably formed in reliance upon the honor of the government in making and abiding by its proposals." *Id.* at 18. In support, the court reasoned that "two distinct sources of constitutional right[s] are involved here: most obviously and directly, the right to fundamental fairness embraced within substantive due process guarantees; less directly perhaps, but nonetheless importantly, the Sixth Amendment right to effective assistance of counsel." *Id.* at 18. Therefore, the court reasoned that on remand, "the only remedy available is specific enforcement of the plea proposal * * *." *Id.* at 20.

*State v. Luciano*, 8th Dist. No. 58812, 1991 Ohio App. LEXIS 3567, *9-13 (July 18, 1991).

{¶14} The Supreme Court rejected the idea that a constitutional right to enforce a proposed plea agreement is the only remedy. *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). The enforcement of the agreement is an available remedy, but so is withdrawal of the plea, or trial. *Mabry* at fn. 11. The appropriate remedy is left to the sound discretion of the trial court. Therefore the trial court's decision on the appropriate remedy must be reviewed for an abuse of discretion. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶15} Here, when the situation was brought to the trial court's attention, the court determined to give the parties more time to reach an agreement or go to trial. The trial court implicitly rejected the plea agreement. This was not an abuse of discretion given that the activities appellant had engaged in caused the death of a pedestrian, and the plea did not account for appellant's role in this man's death.

**{¶16}** Another appellate district has examined this issue and come to the conclusion that a plea agreement not set forth on the record at a change of plea hearing is not enforceable by the defendant because of the executory nature of any acceptance of the state's offer. *State v. Darnell*, 4th Dist. No. 02CA15, 2003-Ohio-2775, ¶ 9. Before a plea agreement is set forth on the record and accepted by the defendant and the trial court, it remains a wholly executory contract, and the defendant is not bound by any acceptance of the offer until a plea is entered because the plea must be voluntary. Crim.R. 11(C)(2)(a). As an executory agreement, specific performance is available only when the defendant has shown detrimental reliance — that a detrimental change in position has occurred in reliance upon the agreement. *U.S. v. Streebing,* 987 F.2d 368, 372 (6th Cir.1993); *State v. Knight*, 4th Dist. No. 1060, 1981 Ohio App. LEXIS 11953, *7-8 (Apr. 22, 1981).

> **{¶17}** This view is supported by the Supreme Court of Virginia:
>
> [A] plea "bargain" standing alone is without constitutional significance because it is a mere executory agreement "which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution." [*Commonwealth v. Sandy*, 257 Va. 87, 91, 509 S.E.2d 492 (1999)]. The court concluded that "a commonwealth's attorney may withdraw from a proposed plea agreement at any time before the actual entry of a guilty plea by a defendant or any other change of position by the defendant resulting in prejudice to him because of reliance upon the agreement." *Id.*

*Commonwealth v. Stewart*, 66 Va.Cir. 135, 152, 2004 Va.Cir. LEXIS 325 (Va.Cir.Ct. 2004).

**{¶18}** Appellant is asking this court to order enforcement of a plea agreement whose terms are unknown and disputed by the parties. Appellant claims an agreed sentence of two years was a part of the offer, but that does not appear anywhere in the record, and the state vehemently denies that its offer included any length of sentence.

**{¶19}** Here, any contract is wholly executory, and appellant has not shown that it was an abuse of discretion for the trial court to fail to order specific performance of an agreement whose terms were not clearly set forth before it. Appellant did provide statements to the police during plea negotiations that may have been inculpatory. Such statements made in reliance on the plea agreement could show a detrimental change in position. But here, the statements were made prior to appellant accepting any offer by the state, and even before the offer appellant accepted was made. In his motion to turn over audio recordings and notes, appellant acknowledges that such statements were given "with the understanding that a plea bargain was going to be offered." Appellant's first assignment of error is overruled.

## B. Maximum Sentence for Conspiracy

**{¶20}** Appellant claims that the trial court erred in sentencing him to the maximum term for conspiracy to engage in a pattern of corrupt activity.

**{¶21}** This court examines alleged errors such as these under the two-step approach set forth by the Ohio Supreme Court in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. First, the parameters of the sentence are examined to

see if the sentence is contrary to law. If it is not, then we review the trial court's analysis to determine if the court abused its discretion when crafting the sentence under review.

**{¶22}** Appellant does not claim that his sentence is contrary to law, so this court will advance to the next step and determine if the trial court abused its discretion regarding appellant's sentence.

**{¶23}** Appellant received an eight-year term of imprisonment for conspiracy. The police officers involved in the case as well as other co-conspirators classified appellant as one of the leaders of the organization. Appellant argues that he cannot read and write English, and therefore could not have led such a vast criminal enterprise as the state alleges.

**{¶24}** According to R.C. 2929.11, the court is guided by the purposes and principles of felony sentencing "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The sentence should also be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). R.C. 2929.12 then sets forth factors the sentencing court should consider in its analysis of R.C. 2929.11. These include factors relating to "the seriousness of the conduct," "the likelihood of the offender's

recidivism," and "any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A).

**{¶25}** Appellant was indicted on dozens of counts stemming from the theft of automobiles and engaging in the sale of their parts. Even though charges may be dismissed as part of the plea agreement, "a sentencing court may [within certain limits] consider a criminal charge, and supporting facts, that is dismissed under a plea agreement." *State v. Bowser*, 186 Ohio App.3d 162, 168, 2010-Ohio-951, 926 N.E.2d 714 (7th Dist.). The criminal enterprise appellant participated in operated throughout northeast Ohio and was responsible for the theft of an untold number of vehicles. The group's activities even resulted in the death of two people.

**{¶26}** The court examined all this evidence, the presentence investigation report, and the victim impact statements, and concluded that the maximum sentence was appropriate. Based on the same information, this court cannot say that the trial court abused its discretion when it determined that a maximum sentence was necessary to adequately punish appellant and to not demean the seriousness of the offense.

**{¶27}** In crafting appellant's sentence, the court explained,

[Appellant] comes to court with a noteworthy prior criminal history, which criminal history extends to his days as a juvenile. * * *.

* * *

This court heard arguments in the courtroom as to whether [appellant] was the head of the [hydra], so to speak, or maybe just one of the top five involved in this vast criminal enterprise that involved the theft of Honda cars and Honda parts from a multicounty area.

\* \* \*

There are two people dead in this case. One was a co-conspirator of yours,
\* \* \* and then an innocent bystander \* \* \*.
Mr. Padilla, two dead people here, they have countless cars stolen, and a
family whose Christmas was ruined.

\* \* \*

And then finally on Count 2, the conspiracy count, engaging in a pattern of
corrupt activity count, I do feel that the maximum sentence is necessary to,
one, send a message that your type of behavior will not be tolerated, and
number two, it's commensurate with the amount of harm involved in this
case, the vast multicounty crime spree that you and your confederates
visited upon the northern Ohio public, is worthy of a maximum eight year
sentence.

{¶28} The court's statement regarding appellant's sentence appropriately sets forth its reasons for imposing a maximum sentence and adequately addresses the requirements under R.C. 2929.11 and 2929.12 for imposing such a sentence.

{¶29} Appellant argues the factors in R.C. 2929.12(B) should lead to the conclusion that a maximum sentence is inappropriate in his case. He cites to R.C. 2929.12(B)(2) dealing with physical harm to the victim. He asserts that he caused no physical harm to his victims. However, that ignores the deaths of two individuals killed during activities of the organized criminal enterprise. Appellant's attempts to distance himself and his actions from these deaths is not availing. Appellant assisted in the theft of the vehicle that crashed into and killed a pedestrian as the driver fled from police while attempting to steal a car for the benefit of the criminal enterprise. The trial court did not abuse its discretion in crafting appellant's sentence.

III. Conclusion

{¶30} The trial court implicitly rejected the plea agreement offered to appellant by the state, and therefore did not abuse its discretion by not ordering specific performance of that plea deal where the terms were and are still unknown. The court also did not abuse its discretion in sentencing appellant where he held a position of leadership in a vast criminal enterprise that resulted in significant monetary losses to victims and the deaths of two people.

{¶31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA A. BLACKMON, A.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS WITH SEPARATE OPINION ATTACHED

SEAN C. GALLAGHER, J., CONCURRING:

{¶32} I concur fully with the judgment and analysis of the majority, but write separately to address concerns about how the circumstances of a plea bargain can impact the perception of fairness within our justice system.  Had the terms specifically been outlined on the record, my view of the outcome may well have been different.

{¶33} In this case, both the prosecutor and defense counsel were placed in untenable positions as the plea process evolved.   At the oral argument, it was learned that the prosecutor made a plea offer based on an understanding he developed with those immediately involved in the state's case and, with approval, communicated that offer to defense counsel.   After conferring with his client, the defense attorney indicated his client would accept that plea. Unbeknownst to both, a supervisor above the investigating officers later disapproved the plea agreement and voiced concerns to the prosecutor's supervisors, who then rescinded the original plea offer.

{¶34} It is not uncommon in plea discussions to have myriad problems arise that impact the outcome.   Thus, this is certainly not a case of first impression.   Nevertheless, this is a good example of what can be, and should be, avoided.

{¶35} Certainly, trial judges have discretion to accept or refuse plea agreements, and victims have statutory rights respecting their views and the impact that a crime has on their lives. R.C. Chapter 2930.   Beyond those concerns, when prosecutors accept cases for prosecution, they should make clear the parameters for input from concerned and

interested parties and make it clear they have the final say in what will be offered or accepted by their office. R.C. 309.08.

{¶36} As the majority notes, this indictment involved 35 individuals covering 258 counts. While the specific terms of the plea are unclear and there now seems to be some debate over what exactly was agreed to by the defendant, there is no dispute a plea was offered and that plea was accepted. While it may not be practical in every case and it would not necessarily eliminate every problem, a written plea agreement, reviewable by all parties in advance, would seem to be a good way to avoid the pitfall experienced here. A written plea offer and agreement can greatly limit problems, like here, where an oral offer is made and then is subsequently rescinded on the morning that the plea is to be taken in open court.

{¶37} The defense counsel in this case is a former prosecutor and is now defense counsel with a long history of honesty and integrity on both sides of the bar. To have to convey to a client an agreement that includes jail time, only to then have to tell the client that the plea has changed on the morning of the plea hearing does not inspire a great deal of confidence in the process. Likewise, a prosecutor who works up a plea with the input of police investigators and victims and has it approved by a supervisor can feel undermined in his or her efforts to achieve case resolution when the terms are changed at the eleventh hour. In this instance, both the trial prosecutor and the defense counsel had to wade through a very difficult situation that would best be addressed in advance, before the original plea was offered.

**{¶38}** It is hoped that this case will result in changes that eliminate the concerns raised here.