[Cite as *State v. Sykes*, 2018-Ohio-4774.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106390**

**STATE OF OHIO**

PLAINTIFF-APPELLANT

vs.

**LYNDA SYKES**

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-08-513836-A

**BEFORE:** E.T. Gallagher, P.J., S. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:** November 29, 2018

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:     Mary McGrath
        Anna M. Faraglia
        Katherine Mullin
        Amy Venesile
Assistant Prosecuting Attorneys
The Justice Center, 8th and 9th Floors
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Mark Stanton
Cuyahoga County Public Defender

BY:     Erika B. Cunliffe
Assistant Public Defender
Courthouse Square, Suite 200
310 Lakeside Avenue
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

{¶1} Appellant, state of Ohio, appeals the judgment of the common pleas court, granting the motion for judicial release filed by defendant-appellee, Lynda Sykes. The state raises the following assignments of error for review:

> 1. The trial court's conclusion that Lynda Sykes was eligible for judicial release is contrary to law.
>
> 2. The record does not support the court's conclusion that she was eligible for judicial release.
>
> 3. The court failed to make the findings required under R.C. 2929.20(J) to grant judicial release.

**{¶2}** After careful review of the record and relevant case law, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

## I.  Procedural and Factual History

**{¶3}** In July 2008, Sykes was named in a single-count indictment, charging her with aggravated murder in violation of R.C. 2903.01(C), with a victim under the age of 13 specification.  The victim was Sykes's six-year-old niece, who was in Sykes's legal custody at the time of her death.

**{¶4}** In November 2009, Sykes entered into a plea agreement with the state and pleaded guilty to involuntary manslaughter in violation of R.C. 2903.04(A), and endangering children in violation of R.C. 2919.22(B)(2).   As part of the plea agreement, Sykes agreed to serve a period of incarceration of 15 years to be served "in totality."   Defense counsel confirmed that the terms of the agreed-upon sentence as set forth by the prosecutor reflected his understanding of the proposed agreement.

**{¶5}** During the plea colloquy, the trial court advised Sykes as follows:

TRIAL COURT: Now, per the agreement that your counsel has reached with the state of Ohio you are going to be entering into a plea agreement with a mandatory agreed[-]upon 15-year prison sentence so that will be the sentence you receive in terms of incarceration.  15 years, followed by the post-release control period if you enter this plea.  Do you understand that?

SYKES: Yes, Your Honor.

**{¶6}** Upon accepting Sykes's guilty pleas, the trial court proceeded directly with sentencing. The trial court expressed that it would "impose the agreed[-]upon sentence" as set forth by the parties during the plea portion of the hearing.   Accordingly, the trial court sentenced Sykes to an aggregate 15-year term of imprisonment.   The sentencing journal entry reiterated

that the 15-year prison term was "agreed to with the state." However, the entry does not reference the mandatory nature of the sentence.

{¶7} In June 2016, Sykes filed a motion for judicial release pursuant to R.C. 2929.20. Sykes argued that (1) she is an eligible offender for judicial release, (2) has served more than one-half of her nonmandatory prison sentence, and (3) community control sanctions will adequately punish her and protect the community from future crime. The state opposed the motion, arguing that Sykes was not eligible for judicial release because she was serving a mandatory prison term pursuant to the terms of the negotiated agreed-upon sentence.

{¶8} A hearing was held on the motion for judicial release. At the hearing, defense counsel reiterated the arguments raised in the motion for judicial release. Regarding eligibility, defense counsel explained that Sykes's convictions did not carry mandatory prison terms by operation of law. Counsel further noted that the trial court's sentencing journal entry does not mention a mandatory sentence, but merely references that the parties agreed to impose a 15-year prison sentence.

{¶9} Counsel further argued that the circumstances supporting the indictment warranted Sykes's early release from prison. Defense counsel claimed that while "[t]he state of Ohio has painted Ms. Sykes as a person who committed a terrible crime," the facts demonstrate that "it was a tragic series of events that caused the death of [the victim]." Defense counsel informed the court that prior to the plea negotiations in this case, counsel located a coroner, Dr. Robert Bux, who analyzed a portion of the Cuyahoga County Coroner's report. Dr. Bux opined that the victim died as a result of being accidently locked into a toy box located in Sykes's backyard by another young child who was on the scene. The victim had "sickle-cell traits," and Dr. Bux concluded that her death was the result of the extreme heat inside the box that "triggered a

sickle-cell reaction." Defense counsel acknowledged that Sykes initially fabricated a story to the police and claimed that the victim had drowned while swimming at Edgewater Park. However, counsel maintained that Sykes made up the story because she was "in shock" and that once she was released from Northcoast Behavioral Healthcare Center, she "explained that the child had been found in the toy box."

{¶10} In response, the state argued that Sykes was not eligible for judicial release because, pursuant to her plea agreement, she was serving a mandatory prison term. The state noted that the mandatory nature of the prison term was negotiated and was the basis of the state's decision to reduce the aggravated murder charge to involuntary manslaughter. The prosecutor explained that had Sykes not accepted the mandatory prison term, "the state would not have participated in this plea agreement."

{¶11} With respect to defense counsel's reference to Dr. Bux's letter, the state reiterated that his findings were known prior to the plea and were considered during plea negotiations. The prosecutor stated that the Cuyahoga County Coroner's Office reviewed Dr. Bux's report but did not agree with his findings. The coroner took the victim's "mild form of sickle-cell trait" into consideration but ultimately determined that it was not a factor in her death. Thus, the coroner stood by her findings that the victim's death was caused by "aspiration of gastric contents with acute bronchopneumonia due to near asphyxiation by suffocation." The coroner found blunt impact trauma that was believed to have occurred close to the time of the victim's death. In addition, the coroner opined that the victim had been suffocated nearly to death based on a cluster of abrasions found around the child's mouth that indicated that "something had to have been placed over [the victim's] mouth."

**{¶12}** Upon hearing from the parties, the trial court stated that it wished to understand the facts that formed the state's belief that an aggravated murder charge was warranted in this case. The court expressed that consideration of the competing facts was necessary to determine whether the plea agreement was an "enforceable" contract that was the product of "an arm's length transaction negotiation." The court further noted that at the time of Sykes's plea, judicial release was not available to her given the length of her sentence,[1] and therefore, was not an issue placed on the record during the plea.

**{¶13}** Following a continuation of the hearing, the parties appeared before the court and summarized the facts supporting their competing beliefs regarding whether the victim's death was intentional or the product of a tragic accident. After considering the facts supporting the indictment and the transcript of the plea and sentencing proceedings, the trial court determined that it had discretion to grant Sykes judicial release. The court then proceeded to consider the merits of the motion and noted that defense counsel presented "unrefuted evidence that [Sykes] has had a stellar prison record." Thus, the trial court granted the motion for judicial release and placed Sykes on five years of supervision with the Cuyahoga County Probation Department.

**{¶14}** The state now appeals the trial court's judgment.

## II. Law and Analysis

### A. R.C. 2953.08(B)(3)

**{¶15}** As an initial matter, we find the state is authorized under R.C. 2953.08(B)(3) to appeal a granting of judicial release. Section (B)(3) of R.C. 2953.08 states:

---

[1] In 2011, R.C. 2929.20 was amended to provide offenders serving an aggregated nonmandatory prison term in excess of ten years with the opportunity to seek judicial release once the offender has served one-half of the prison term. R.C. 2929.20(C)(5).

(B) In addition to any other right to appeal and except as provided in division (D) of this section, a prosecuting attorney, a city director of law, village solicitor, or similar chief legal officer of a municipal corporation, or the attorney general, if one of those persons prosecuted the case, may appeal as a matter of right a sentence imposed upon a defendant who is convicted of or pleads guilty to a felony or, in the circumstances described in division (B)(3) of this section the modification of a sentence imposed upon such a defendant, on any of the following grounds:

\* \* \*

(3) The sentence is a modification under section 2929.20 of the Revised Code of a sentence that was imposed for a felony of the first or second degree.

{¶16} This court has acknowledged that a judgment granting judicial release is a modification of a sentence, which the state has the right to appeal. *State v. Costlow*, 8th Dist. Cuyahoga No. 89501, 2008-Ohio-1097, ¶ 9. Because Sykes's sentence was imposed for involuntary manslaughter, a felony of the first degree, and endangering children, a felony of the second degree, the state is authorized to appeal the trial court's granting of judicial release pursuant to R.C. 2953.08(B)(3).

**B. Eligibility for Judicial Release**

{¶17} In its first assignment of error, the state argues the trial court's conclusion that Sykes is eligible for judicial release is contrary to law. In its second assignment of error, the state argues the record does not support the trial court's conclusion that Sykes is eligible for judicial release. We address these assignments of error together for clarity.

{¶18} R.C. 2929.20 governs the procedure for judicial release. "Judicial release is a privilege, not an entitlement." *State v. Ware*, 141 Ohio St.3d 160, 2014-Ohio-5201, 22 N.E.3d 1082, ¶ 11. "'There is no constitutional or inherent right \* \* \* to be conditionally released before the expiration of a valid sentence.'" *State ex rel. Hattie v. Goldhardt*, 69 Ohio St.3d 123, 125, 630 N.E.2d 696 (1994), quoting *Greenholtz v. Inmates of Nebraska Penal & Corr.*

*Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).  Courts have no inherent power to suspend execution of a sentence, and they must strictly construe statutes allowing such relief. *State v. Smith*, 42 Ohio St.3d 60, 61, 537 N.E.2d 198 (1989).

{¶19} Pursuant to R.C. 2929.20(A)(1), judicial release is available only to "eligible offenders."  An "eligible offender" is one who is serving one or more nonmandatory prison terms.  *Id.*  A "non[-]mandatory prison term" is defined as "a prison term that is not a mandatory prison term."  R.C. 2929.20(A)(2).  Upon motion by an eligible offender, the sentencing court "may reduce the eligible offender's aggregated nonmandatory prison term or terms through a judicial release under this section."  R.C. 2929.20(B).  The statute confers considerable discretion upon a trial court in deciding whether to grant or deny an offender's motion for judicial release.  *State v. Pollard*, 8th Dist. Cuyahoga No. 97166, 2012-Ohio-1196, ¶ 18.  The statute provides specific time periods in which an eligible offender may seek judicial release:

> If the aggregated nonmandatory prison term or terms is more than ten years, the eligible offender may file the motion not earlier than the later of the date on which the offender has served one-half of the offender's stated prison term or the date specified in division (C)(4) of this section.

R.C. 2929.20(C)(5).

{¶20} As stated, an order granting judicial release is a modification of sentence that the state has the right to appeal.  R.C. 2953.08(B)(3).  Our standard of review is set forth in R.C. 2953.08(G)(2), which states:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to

the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

*Id.*

**{¶21}** On appeal, the state concedes that the offenses of involuntary manslaughter and endangering children do not require mandatory prison terms by operation of law. However, the state maintains that Sykes was ineligible for judicial release because she agreed to a mandatory prison term of 15 years pursuant to the terms of the negotiated plea agreement. Thus, the state submits that the trial court's determination that Sykes was an eligible offender was contrary to law pursuant to the express language of R.C. 2929.20(A)(1)-(2).

**{¶22}** After careful review of the record, we find the trial court's determination that Sykes was eligible for judicial release was not predicated on a statutory analysis or a conclusion that Sykes's 15-year prison term was not mandatory. Rather, the trial court's statements at the conclusion of the motion hearing indicate that the court found Sykes was eligible for judicial release because, based on the competing theories presented by the parties, the court believed Sykes had been punished enough where the case "could have resulted in a not guilty verdict." Consideration of the facts underlying the basis of the indictment, however, is irrelevant to determining whether Sykes is an eligible offender under R.C. 2929.20(A)(1). This court's review is limited to whether the trial court's acceptance of Sykes's plea agreement with the state rendered her ineligible for judicial release.

{¶23} The decision whether to accept or to reject a plea bargain rests within the sound discretion of the trial court. *State v. Asberry*, 173 Ohio App.3d 443, 2007-Ohio-5436, 878 N.E.2d 1082 (8th Dist.). A plea agreement is a contract between the state and a criminal defendant and is subject to contract-law principles. *State v. Butts*, 112 Ohio App.3d 683, 686, 679 N.E.2d 1170 (8th Dist.1996). The terms of a plea agreement must therefore be explicit. *State v. Padilla*, 8th Dist. Cuyahoga No. 98187, 2012-Ohio-5892, ¶ 11. As such, when a sentence is agreed to by the parties as part of the negotiated plea, there is an implicit "understanding that in exchange for the plea, the defendant and the state have agreed to be mutually bound to a specific sentence or a sentence authorized by law within a prescribed range." *State v. Huffman*, 8th Dist. Cuyahoga No. 105805, 2018-Ohio-1192, ¶ 17. "[I]nherent in an agreed sentence is a quid pro quo arrangement where the defendant and prosecutor have either given up something or attained something in exchange for being bound by a nonappealable sentence." *Id*. This court explained:

> Agreed sentences serve an important function in Ohio's justice system. For defendants, they are an effective tool to "cap" or limit sentencing exposure. This is especially true where the defendant is facing significant jail time either due to the severity of the individual offense or the sheer volume of offenses. In these instances, the defendant is giving up the right of appeal to be secure in the knowledge that he or she will not be subject to a greater punishment than the agreed sentence. For prosecutors, an agreed sentence secures a plea to perhaps a difficult or uncomfortable case in exchange for an understanding that a sentence will be to a level or range that the prosecutor deems satisfies the victim or society as a whole. Such arrangements do not restrict a trial court's discretion to reject plea agreements, nor do they bind a trial court to a jointly recommended sentence.

*Id*. at ¶ 19.

{¶24} In this case, Sykes undeniably entered her plea with the understanding that she would be sentenced to a mandatory agreed-upon prison term of 15 years pursuant to the parties' negotiated plea agreement. Sykes was questioned at length during the Crim.R. 11 colloquy and

expressly stated that she understood she was "entering into a plea agreement with a mandatory agreed-upon 15-year prison sentence." Defense counsel confirmed the mandatory nature of the agreed-upon sentence and thereafter requested at sentencing that the trial court impose the agreed-upon sentence "and follow the recommendation of both counsel." The trial court accepted the plea agreement in its entirety and stated at sentencing that it was imposing the agreed-upon sentence. Under these circumstances, we find the plea agreement, which included an agreed-upon sentence of 15 years in prison "to be served in totality," constituted a valid and enforceable contract that mutually bound the parties to its terms.

{¶25} There is no dispute that Sykes pleaded guilty to offenses that do not carry mandatory prison terms under the Ohio Revised Code. However, pursuant to the express terms of the plea agreement and the trial court's subsequent acceptance and imposition of the agreed-upon sentence, we find Sykes's 15-year term of imprisonment was mandatory under contract principles. The state and Sykes entered into a quid pro quo arrangement where Sykes agreed to serve a mandatory prison term in exchange for the state's agreement to amend her aggravated murder charge to involuntary manslaughter. R.C. 2929.20 contains no language to suggest its eligibility restrictions apply only to offenders who are subject to statutorily mandated prison terms as opposed to prison terms mandated by an approved plea agreement. It simply states that judicial release is not applicable to an offender who is serving a mandatory prison term.

{¶26} We further note that the trial court's failure to include the term "mandatory" in the sentencing journal entry did not serve to invalidate the trial court's acceptance of the agreed-upon sentence or the mandatory nature of the prison term. The sentencing journal entry incorporates the terms of the agreed-upon sentence by reference. Moreover, Sykes was notified at the

sentencing hearing that the court was imposing the agreed-upon sentence, which unquestionably included a mandatory prison term. *See State v. El*, 8th Dist. Cuyahoga No. 105089, 2017-Ohio-8165, ¶ 8 (the failure of the court to include in the sentencing entry that a prison term is mandatory does not affect the validity of the imposed sentence or sentences).

{¶27} Based on the foregoing, we find Sykes is not an eligible offender under R.C. 2929.20(A). Accordingly, the trial court's modification of Sykes's sentence is clearly and convincingly contrary to law. We recognize the thoroughness of the trial court's considerations was done in an effort to reach a result it deemed appropriate based on information that was not before the court in 2009. However, consideration of such information led to a judgment that more closely resembled a reconsideration of the court's acceptance of Sykes's plea and imposition of her sentence than a statutory analysis under R.C. 2929.20.

{¶28} Our decision should not be interpreted as a conclusion that all agreed-upon sentences equate to mandatory sentences that preclude eligibility for judicial release. *See, e.g., State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 7, 9, 21 (suggesting eligibility for judicial release under R.C. 2929.20(C)(4) where the plea agreement and agreed-upon sentence did not include a negotiated condition that the otherwise nonmandatory prison terms be served in their totality). However, where, as here, the mandatory nature of the agreed-upon sentence is an express condition of the plea agreement, it becomes a binding contractual term that renders the offender ineligible for judicial release under R.C. 2929.20(A).

{¶29} The state's first and second assignments of error are sustained. Our resolution of these assignments of error render the third assignment of error moot.

{¶30} Judgment reversed and remanded.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS WITH SEPARATE OPINION

SEAN C. GALLAGHER, J., CONCURRING:

{¶31} I concur fully with the majority, but write separately to address concerns regarding the outcome of this case.

{¶32} First, I am acutely aware that this decision will result in Sykes's return to the institution. It is one thing to deny release, but another to revoke release after it has occurred. It is hard to argue that there is not something inherently unfair in such a process.

{¶33} Next, I understand and I am sensitive to the concerns of the trial judge who made the decision to grant judicial release. While we find it was in error, it is understandable how a judge would review the progress Sykes made in the institution, as well as the judge's concerns about the nature of the original plea, and determine release was warranted. Nevertheless, as the majority opinion states, the law is clear that Sykes was not eligible.

{¶34} This case serves as yet another example of the inherent problems associated with the Senate Bill 2 sentencing provisions from 1996. I have been a critic of Senate Bill 2 in the

past, in part, for the lack of flexibility it brought to Ohio's sentencing scheme. While the opportunity for judicial release has been expanded since the original version of Senate Bill 2, it hardly creates the independent review of an offender's status that existed with the parole board under the prior law. Senate Bill 2 ended that process and brought us so-called "truth in sentencing," and the mandatory time provisions and the agreed sentence provisions leave little or no room for the subsequent retrospective evaluation of a sentence.

{¶35} The lack of flexibility cuts both ways. In 2017, Ohio State student Regan Tokes was brutally murdered by Brian Golsby after Golsby was released from prison after completing a flat-time sentence for attempted rape. Although Golsby was under supervision at the time of the murder, there remains the lingering question of whether Golsby would have been released given his prior criminal history under the old law.

{¶36} In any event, I concur fully with the majority opinion.