[Cite as *State v. Drake*, 2021-Ohio-2589.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                              :

    Plaintiff-Appellant,                  :

                               Nos. 109883 and 109884

    v.                                         :

JAMAHL DRAKE,                              :

    Defendant-Appellee.                 :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 29, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-14-589745-A and CR-14-585989-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Callista Plemel, Assistant Prosecuting
Attorney, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Erika B. Cunliffe, Assistant Public Defender, *for appellee.*

PER CURIAM:

{¶ 1} The state of Ohio appeals the trial court's judgment granting defendant-appellee Jamahl Drake's ("Drake") motion for judicial release, alleging he was not an eligible offender because he was serving an agreed mandatory

sentence. Based on a thorough review of the plea and sentencing hearings, we find the plea agreement explicitly expressed an agreed mandatory sentence, thereby making Drake ineligible for judicial release. Accordingly, we reverse and remand.

## I. PROCEDURAL AND FACTUAL BACKGROUND

{¶ 2} These cases arise from two separate incidents that occurred four months apart in 2014. The first incident, which resulted in Cuyahoga C.P. No. CR-14-585989-A, occurred on May 16, 2014, when officers responded to a 15 person bar fight with shots fired outside the Bayou Bar and Shillelagh's Bar on Noble Road in Cleveland Heights, Ohio. Surveillance footage showed Drake and another male inciting violence and actively participating in the melee. On June 14, 2014, Drake was indicted on one count of aggravated riot, a fourth-degree felony; one count of inciting to violence, a third-degree felony; and one count of inciting to violence a first-degree misdemeanor.

{¶ 3} While out on bond, Drake was involved in a tragic shooting on September 20, 2014, resulting in Cuyahoga C.P. No. CR-14-589745-A. Drake and his codefendants Darius Wills ("Wills") and Anthony Hunt ("Hunt") were socializing at another bar and restaurant, the Double R, in Cleveland Heights, when their behavior caused them to get thrown out by security. The trio began to leave the area, with Drake in his own vehicle and Hunt and Wills in Hunt's vehicle, when Drake decided to stop behind Hunt's vehicle. Drake exited his vehicle and removed a Glock .40 millimeter firearm from Hunt's vehicle. He gave the firearm to Wills, telling him they were going back to the Double R. Once they were back at the Double R, Drake

instructed Wills to open fire. Wills fired 19 shots into the restaurant, killing 25-year-old Ms. Arrion Smiley and seriously injuring 23-year-old Ms. Malena Roberson.

{¶ 4} On September 29, 2014, Drake was charged in Cuyahoga C.P. No. CR-14-589745 in a 14-count indictment with aggravated murder, murder, eight counts of felonious assault, attempted murder, improperly discharging into habitation, discharge of firearm on or near prohibited premises, and having weapons while under disability. Every count except the having weapons while under disability charge included one- and three-year firearm specifications. These two cases were resolved with a single plea agreement.

{¶ 5} On February 23, 2015, pursuant to the plea agreement, Drake pled guilty to the indictment as charged in Cuyahoga C.P. No. CR-14-585989-A. The prosecutor agreed that Counts 1 and 3 would merge into Count 2, inciting to violence, a third-degree felony, for the purposes of sentencing. In Cuyahoga C.P. No. CR-14-589745-A, the agreement also called for Drake to plead guilty to Count 2, murder, which was amended to involuntary manslaughter, a felony of the first degree, in violation of R.C. 2903.04(A). The remaining counts and all the firearm specifications were dismissed.

{¶ 6} The state maintains that part of the plea agreement was the express condition that the trial court must sentence Drake to a mandatory prison term of five, six, or seven years for the involuntary manslaughter charge. The journal entry for the involuntary manslaughter guilty plea in Cuyahoga C.P. No. CR-14-589745-A does not state the sentence is mandatory, but it does state all the other terms of the

plea agreement, such as the amendment of Count 2 and the dismissal of the other counts and specifications. With respect to the inciting to violence charge from Cuyahoga C.P. No. CR-14-585989-A, the court retained discretion to impose "any potential sentence" because the parties had not agreed to any mandatory sentence for that case.

{¶ 7} On March 23, 2015, the trial court sentenced Drake in Cuyahoga C.P. No. CR-14-589745-A to seven years in prison on the involuntary manslaughter charge, to be served consecutively to an additional two years in prison for the merged inciting to violence charge in Cuyahoga C.P. No. CR-14-585989-A. The trial court's sentencing journal entry does not indicate that the seven-year sentence was an agreed-sentence or mandatory sentence pursuant to the plea agreement. Drake never appealed his sentence or contested his plea and the state of Ohio never appealed the sentence either.

{¶ 8} On April 20, 2020, Drake filed motions for judicial release in both cases. The motions were considered by the trial judge that succeeded the judge that had presided over the original plea and sentencing hearings. The state was granted leave to respond by May 12, 2020. On June 12, 2020, the hearing for judicial release was set for July 9, 2020. The state filed an objection to Drake's motion for judicial release on June 19, 2020. On July 9, 2020, Drake agreed to waive his physical presence at the hearing and appeared by video due to the COVID-19 pandemic. At the start of the hearing, the state made an oral motion for a continuance to contact the victims as required by R.C. 2930.17. The court denied the motion. The court

did, however, allow the state to contact the victims and their families and permit them to submit letters within the ten-day period before the court was required to rule on the motion for release, as required under R.C. 2929.20. On July 14, 2020, the state filed a motion requesting the in-person appearance of the victims despite the COVID-19 pandemic closures. The court granted this and set the hearing for July 16, 2020. Due to the COVID-19 pandemic, Drake again agreed to waive his presence at this hearing where the court heard statements from Roberson, and Smiley's father, mother, sister, and her eleven-year-old daughter.

{¶ 9} On July 17, 2020, the trial court released a judgment entry finding that Drake qualified as an eligible offender, "having served more than 5 years of a non-mandatory 9 year sentence." The court noted that Drake had served the sentenced time for the merged inciting to violence charge in Cuyahoga C.P. No. CR-14-585989-A. The court was not provided the transcript from either the plea or sentencing hearing for Drake's cases and therefore had no way of knowing what the parties stated the terms of the plea agreement to be, outside of the prior judge's journal entry. The court granted Drake's motion for judicial release, making the required findings, including that Drake was not serving a mandatory prison sentence, and ordered his release from prison.

{¶ 10} The state now appeals the trial court's order granting Drake judicial release, asserting the following assignment of error:

> The trial court erred in granting defendant-appellee Drake's judicial release. Drake is not an eligible offender pursuant to R.C. 2929.20(A)(1) because he was serving an agreed sentence of seven

years, which constitutes a mandatory prison term. The trial court's finding that Drake was an eligible offender is therefore contrary to law.

## II.   LAW AND ANALYSIS

{¶ 11}   The state is authorized pursuant to R.C. 2953.08(B)(3) to appeal a grant of judicial release:

> (B) In addition to any other right to appeal and except as provided in division (D) of this section, a prosecuting attorney, a city director of law, village solicitor, or similar chief legal officer of a municipal corporation, or the attorney general, if one of those persons prosecuted the case, may appeal as a matter of right a sentence imposed upon a defendant who is convicted of or pleads guilty to a felony or, in the circumstances described in division (B)(3) of this section the modification of a sentence imposed upon such a defendant, on any of the following grounds:
>
> * * *
>
> (3) The sentence is a modification under section 2929.20 of the Revised Code of a sentence that was imposed for a felony of the first or second degree.

{¶ 12} This court has held that a judgment granting judicial release is a modification of a sentence, which the state has the right to appeal. *State v. Sykes*, 2018-Ohio-4774, 124 N.E.3d 406, ¶ 15-16 (8th Dist.), citing *State v. Costlow,* 8th Dist. Cuyahoga No. 89501, 2008-Ohio-1097, ¶ 9. Because Drake's sentence was imposed for involuntary manslaughter, a felony of the first degree, the state is authorized to appeal the trial court's grant of judicial release pursuant to R.C. 2953.08(B)(3).

{¶ 13} Pursuant to R.C. 2929.20(A)(1), judicial release is available only to "eligible offenders," who is one who is serving one or more nonmandatory prison

terms. *Id.* A "nonmandatory prison term" is defined as "a prison term that is not a mandatory prison term." R.C. 2929.20(A)(2).

{¶ 14} The appellate standard of review is set forth in R.C. 2953.08(G)(2), which states:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 15} The state argues that Drake does not qualify as an "eligible offender" because the terms of his plea agreement required that his sentence be a mandatory prison term.

{¶ 16} "A plea agreement is a contract between the state and a criminal defendant and is subject to contract-law principles." *Sykes*, 2018-Ohio-4774, 124 N.E.3d 406, at ¶ 23, citing *State v. Butts*, 112 Ohio App.3d 683, 686, 679 N.E.2d 1170 (8th Dist.1996). "The terms of a plea agreement must therefore be explicit." *Id.*, citing *State v. Padilla*, 8th Dist. Cuyahoga No. 98187, 2012-Ohio-5892, ¶ 11. "As such, when a sentence is agreed to by the parties as part of the negotiated plea, there

is an implicit 'understanding that in exchange for the plea, the defendant and the state have agreed to be mutually bound to a specific sentence or a sentence authorized by law within a prescribed range.'" *Id.*, quoting *State v. Huffman*, 8th Dist. Cuyahoga No. 105805, 2018-Ohio-1192, ¶ 17. "[I]nherent in an agreed sentence is a quid pro quo arrangement where the defendant and prosecutor have either given up something or attained something in exchange for being bound by a nonappealable sentence." *Id.*, quoting *Huffman* at *id.*

{¶ 17} This court dealt with an almost identical issue in *Sykes*. In *Sykes*, we found the defendant was improperly granted judicial release, because the terms of the plea agreement made her prison term mandatory and therefore, she was not an eligible offender under the statute. *Id.* at ¶ 22-23. Even though the sentencing judgment entry did not contain the term "mandatory," this did not invalidate the trial court's acceptance of the agreed sentence or the mandatory nature of the prison term pursuant to the terms of the plea agreement. *Id.* at ¶ 26; *see also State v. El*, 8th Dist. Cuyahoga No. 105089, 2017-Ohio-8165, ¶ 8 (the failure of the court to include in the sentencing entry that a prison term is mandatory does not affect the validity of the imposed sentence or sentences).

{¶ 18} In the instant case, upon review of the transcript from the plea hearing, it is unequivocal that the terms of the plea agreement were explicitly stated. The state dismissed all the other charges and gun specifications, and amended Count 2, murder, to involuntary manslaughter, on the condition that the defendant agreed to plead guilty to involuntary manslaughter and serve a mandatory prison

term of five to seven years. It is also clear that when Drake entered his guilty plea to involuntary manslaughter, he knew he was going to be serving five to seven years pursuant to this plea agreement as the trial court explicitly explained. The trial court questioned Drake at length during the Crim.R. 11 colloquy to make sure Drake understood the ramifications of the mandatory sentence that was a part of this agreement:

> THE COURT: So and that is actually part of an agreed or recommended sentence is that if you're going to plead guilty and have an agreement with the State on what the prison term is going to be, it's going to be a prison term. So you understand how that recommended agreed sentence works?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Now there is no question that I already agreed with the lawyers that I am happy to follow this recommended and agreed sentence if this is the way you plead. Understood?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: So that's already a given. If you plead guilty, then I am, the Court, is obligated itself to give you the five years or six years or seven years. We just don't know what the number of years is yet, right?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: So you do understand this becomes now a mandatory prison term, right?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: So let's talk about the ramifications of that. If you have a mandatory prison sentence, you can't get out early on judicial release or shock probation. You understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: You can file the motion. The Court has no power to get you out of prison, right?

THE DEFENDANT:  Yes, ma'am.

Further, Drake's counsel repeated numerous times that he spent a great deal of time explaining the arrangement to Drake, that Drake understood it, and that Drake was entering the plea knowingly, intelligently, and voluntarily.

{¶ 19}  The trial court also reiterated the terms of the plea agreement and the mandatory nature of the agreed sentence at the subsequent sentencing hearing:

> THE COURT:  Mr. Drake pled guilty to involuntary manslaughter, a first-degree felony, normally carrying three to 11 years but he plea bargained with the State of Ohio with a view that he would receive not a sentence in prison between the usual range of three to 11 years but he reached an agreement with the State of Ohio that he would receive five years, six years or seven years.
>
> Now, when, under Ohio law, parties reach these kinds of agreements with the prosecutor's office on their sentence, what they're really saying is they agree to serve a prison term, they agree to serve a five-year or six-year or seven-year and the parties leave it to the Court's determination which of those prison sentences ought to be received.
>
> * * *
>
> THE COURT:  And this is an agreed sentence so that makes his service of the involuntary manslaughter sentence in effect a mandatory service since he agreed to serve it.

Even Drake acknowledged when addressing the court prior to sentencing that, "I know a mandatory sentence is supposed to be imposed on me."  (Tr. 96.)  The trial court made the terms of the plea agreement explicit both at the plea hearing before accepting Drake's plea and at the sentencing hearing before sentencing.

{¶ 20} Just as in *Sykes*, although the trial court's sentencing entry does not include the term "mandatory," this does not invalidate the terms of the plea agreement, which were understood by both parties to include a mandatory prison

term of five, six, or seven years for the involuntary manslaughter. *Sykes*, 2018-Ohio-4774, 124 N.E.3d 406, at ¶ 26. Further indication of the agreement can be seen in the fact that the sentencing entry contains the other terms of the plea agreement, such as the amended Count 2 and the dismissed counts. The state offered for Drake to have the dismissal of the 13 other counts and all the firearm specifications on the condition that Drake would plead guilty to involuntary manslaughter and serve a prison sentence of five to seven years. Drake indicated to the court on the record that he understood the terms and their ramifications and pled guilty to involuntary manslaughter. The terms were explicit and agreed upon on the record, thereby constituting a valid and enforceable contract that mutually bound the parties to its terms.

{¶ 21} Therefore, we find the terms of Drake's plea agreement with the state expressly required him to serve the agreed sentence for the involuntary manslaughter count, which made his prison term mandatory rendering Drake ineligible for judicial release. As such, we find the trial court's grant of Drake's motion for judicial release was contrary to law.

{¶ 22} We recognize that:

Our decision should not be interpreted as a conclusion that all agreed-upon sentences equate to mandatory sentences that preclude eligibility for judicial release. *See, e.g., State v. Williams*, 8th Dist. Cuyahoga Nos. 104078 and 104849, 2017-Ohio-2650, ¶ 7, 9, 21 (suggesting eligibility for judicial release under R.C. 2929.20(C)(4) where the plea agreement and agreed-upon sentence did not include a negotiated condition that the otherwise nonmandatory prison terms be served in their totality). However, where, as here, the mandatory nature of the agreed-upon sentence is an express condition of the plea agreement, it

becomes a binding contractual term that renders the offender ineligible for judicial release under R.C. 2929.20(A). *Sykes* at ¶ 28.

{¶ 23} The state's only assignment of error is sustained.

{¶ 24} Judgment reversed and remanded. The trial court is hereby ordered to issue a nunc pro tunc order on Cuyahoga C.P. No. CR-14-589745-A to the March 24, 2015 journal entry to reflect that Drake's sentence of seven years for involuntary manslaughter was an agreed mandatory sentence, which makes the prison term mandatory.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
LARRY A. JONES, SR., PRESIDING JUDGE


_____
EILEEN A. GALLAGHER, JUDGE


_____
MARY EILEEN KILBANE, JUDGE