JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} The state of Ohio appeals from an order that granted defendant-appellee Daniel Costlow's motion for judicial release. The state's sole assignment of error complains that the court erred by granting judicial release because it lacked clear and convincing evidence to find that a sanction other than a prison term would adequately punish Costlow and protect the public or the victim. We find no clear and convincing evidence to show that the court's findings were not supported by the record, so we affirm.
 {¶ 2} In March 2006, Costlow pleaded guilty to one count of felonious assault and one count of endangering a child as a result of shaking his five-month-old son. Both counts are felonies of the second degree. The court sentenced Costlow to two years on each count to be served consecutively. In October 2006, Costlow filed a motion for judicial release. The state opposed the motion on grounds that judicial release would demean the seriousness of the offenses and fail to protect the public. The court denied the motion without opinion.
 {¶ 3} In December 2006, Costlow filed a new motion, this time informing the court that he had completed an anger management program, "as requested[.]" The state again opposed the motion, noting that completion of the program would not ensure the public's protection. The court conducted a hearing on the motion after which it granted the motion, reducing Costlow's prison term through judicial release, and giving him five years of community controlled sanctions. The court ordered *Page 4 
Costlow to have no contact with the victim or the victim's mother. It also ordered him to attend parenting and anger management classes and be subject to random drug testing.
 {¶ 4} R.C. 2929.20 sets forth the requirements for judicial release. R.C. 2929.20(H) states:
 {¶ 5} "(1) A court shall not grant a judicial release under this section to an eligible offender who is imprisoned for a felony of the first or second degree, or to an eligible offender who committed an offense contained in Chapter 2925. or 3719. of the Revised Code and for whom there was a presumption under section 2929.13 of the Revised Code in favor of a prison term, unless the court, with reference to factors under section 2929.12 of the Revised Code, finds both of the following:
 {¶ 6} "(a) That a sanction other than a prison term would adequately punish the offender and protect the public from future criminal violations by the eligible offender because the applicable factors indicating a lesser likelihood of recidivism outweigh the applicable factors indicating a greater likelihood of recidivism;
 {¶ 7} "(b) That a sanction other than a prison term would not demean the seriousness of the offense because factors indicating that the eligible offender's conduct in committing the offense was less serious than conduct normally constituting the offense outweigh factors indicating that the eligible offender's conduct was more serious than conduct normally constituting the offense. *Page 5 
 {¶ 8} "(2) A court that grants a judicial release to an eligible offender under division (H)(1) of this section shall specify on the record both findings required in that division and also shall list all the factors described in that division that were presented at the hearing."
 {¶ 9} A motion which grants judicial release is a modification of sentence which the state has the right to appeal. See R.C.2953.08(B)(3). Our standard of review is set forth in R.C.2953.08(G)(2), which states:
 {¶ 10} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
 {¶ 11} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 12} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (D)(2)(e) or (E)(4) of section 2929.14, or division (H) of section2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 13} "(b) That the sentence is otherwise contrary to law." *Page 6 
 {¶ 14} Clear and convincing evidence is "that measure or degree of proof which will produce * * * a firm belief or conviction as to the allegations sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, 477.
 {¶ 15} The state makes no argument that the sentence is contrary to law. Instead, it argues that "[t]he record does not clearly and convincingly support the finding that a sanction other than prison will adequately punish appellee and protect the public or victim." This is an incorrect statement of our standard of review. R.C. 2953.08(G)(2)(a) states that our review is limited to determining if there is "clear and convincing evidence to show that the record does not support the sentencing court's [action]" — not to determine whether the court had clear and convincing evidence to support its findings. The standard of review set forth in R.C. 2953.08(G)(2) places the burden on the state to make an affirmative showing of error by clear and convincing evidence. We therefore examine the order for judicial release only to determine whether there is clear and convincing evidence to show that the court's findings were not supported by the record.
 {¶ 16} The state first argues that Costlow had not been adequately punished because he served only 11 months of a four-year sentence. It maintains that the severity of the injuries inflicted upon the child were such that the time Costlow *Page 7 
served, and the community controlled sanctions imposed following release, would not be sufficient punishment.[1]
 {¶ 17} There is no clear and convincing evidence to show that the court's finding that Costlow had been adequately punished is not supported by the record. The court noted that Costlow had served 11 months of a four-year total sentence. The court found that during those 11 months, Costlow had accepted responsibility for his actions and expressed his remorse for his actions. Although not minimizing the harm caused to the child, the court found that the child appeared to have suffered no permanent effects from the assault. The court found that Costlow had no prior convictions, and one prior juvenile adjudication. The record does not indicate the nature of the adjudication. Although Costlow would be released early, the court placed him on community control sanctions for five years, with intensive supervision in the first year, including random drug testing. The court also ordered Costlow to have no contact with either the child or the child's mother. The court told *Page 8 
Costlow that if he wished to visit with the child, he would have to petition the juvenile division and submit proof of that petition to the court in order to obtain permission separate and apart from any order issued by the juvenile division.[2] Finally, the court stressed to Costlow that if he violated these terms, he would be sent back to prison to serve out the remainder of his original prison sentence.
 {¶ 18} The state offers no evidence to contradict the court's findings. Instead, it simply argues that judicial release was too lenient because Costlow pleaded guilty to committing the two offenses at different times: one when the child was two and one-half months old; the other when the child was five-months-old.
 {¶ 19} The assertion that Costlow had been found guilty of committing the offenses at different times is not only unsupported by the record, it is contradicted by the state's own bill of particulars. The state represented in the bill of particulars that the felonious assault count occurred on September 10, 2005, and that the child endangering count occurred "on or about the same date." Moreover, the state's own brief contradicts its assertion, noting that "[w]hile not charged, appellee was suspected of abusing the victim when, at two months, the victim was found to have *Page 9 
multiple, unexplained bruising over his body after being in appellee's care." See Appellant's Brief at 16-17. By its own admission, the state did not charge Costlow with committing the offenses in two different time frames; hence, its argument that Costlow had been found guilty of assaulting the victim on two separate occasions is without merit.
 {¶ 20} We also find that the state failed to present clear and convincing evidence to show that the court's findings relative to protecting the public were not supported by the record. As previously noted, the court found that Costlow's prior history showed one juvenile adjudication. Costlow had no history of drug or alcohol abuse. The court also found that the child had been the only victim of Costlow's offenses. Costlow told the court that the child's mother "wants nothing to do with me" and that "I know that I will not be able to be in contact with either [the victim or the victim's mother], and it's not even in my wishes to do so." Despite Costlow's statement, the court expressly barred Costlow from having contact with the child and explicitly told Costlow that he would have to petition the court if he subsequently did desire visitation in the future.
 {¶ 21} The state argues that Costlow posed a continued threat to the child for two reasons. First, Costlow had violated a pretrial order barring him from having contact with the child's mother. Second, the child's mother had told the state that she wanted Costlow to be a part of the child's life. *Page 10 
 {¶ 22} The court was well aware that Costlow had violated the pretrial order barring him from contacting the child's mother, noting during the hearing on the motion for judicial release that it had revoked Costlow's bond as a result of that violation. The violation prompted the court's strict conditions for release, in effect barring Costlow from ever seeing the victim or the victim's mother again absent direct approval by the court. These conditions were enforced with the threat that Costlow's postrelease control would be revoked in the event of a violation.
 {¶ 23} We also find that any statements made by the child's mother to the effect that she would seek contact with Costlow did not rise to the level of clear and convincing evidence sufficient to show that judicial release is not supported by the record. The child's mother did not appear before the court, so the court had no opportunity to assess her intentions, thus making this evidence something less than clear and convincing. In any event, the court's order barring Costlow from contact with the child's mother, coupled with Costlow's understanding that he would not be a part of the child's life, diminished the value of the mother's statement. Regardless of whether the child's mother intends to reach out to Costlow, the onus remains on him even if the child's mother does seek contact with him. The state has offered no evidence to show that the court's order of judicial release is not supported by the record. *Page 11 
 {¶ 24} Lastly, we find no evidence to show that the court's decision to grant judicial release would demean the seriousness of Costlow's offenses. Although the child suffered significant injuries, the court noted these injuries did not appear to be permanent. Moreover, the court found that Costlow had expressed deep remorse for his actions and was properly penitent for his actions. Costlow had completed anger management and parenting classes in prison, and claimed to have gained an understanding of why his actions were wrong. The court's very strict conditions of release included intensive supervision for the first year along with random drug testing. These terms made it clear to Costlow that any violation of postrelease control would result in his reincarceration.
 {¶ 25} The state merely rehashes the nature and extent of the child's injuries, and makes the claim that Costlow inflicted harm on two separate occasions. While there is no question that the child's injuries were severe, the strict conditions of judicial release appeared to acknowledge, not demean, the seriousness of the offenses. The state has not shown by clear and convincing evidence that the record does not support the court's decision to order judicial release. The assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 12 
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and KENNETH A. ROCCO, J., CONCUR
[1] The record contains an exhibit entitled "child protection consult" showing that the five-month-old victim had been admitted to the hospital because of vomiting and seizures that followed an "allegedly short fall" which occurred while the child was in Costlow's care. The child had been admitted to the hospital just three months earlier for the evaluation of "multiple, unexplained bruises." The consult indicated that Costlow told a pediatrician that he "accidentally bumped the [child's] head against a low ceiling during play." The consult noted that the child suffered from shaken baby syndrome with "significant intracranial hemorrhage(s), bilateral retinal hemorrhages at different depths, plus one long bond fracture (ulnar buckle fracture). Although no posterior rib fractures are seen now, these may be present and become visible by 2 weeks post-injury." The consult also concluded that the bruising found on the child at age two months was "highly likely" to be the result of "non-accidental injuries."
[2] We do not view these remarks as suggesting that the court could prohibit any visitation between Costlow and the child because an order to that effect might infringe on the juvenile division's authority. Instead, we view the remarks to mean that the trial judge wanted to be informed in advance of any request for visitation as a condition for granting judicial release. Viewed in this manner, the court's conditions on visitation made it clear that, absent prior approval by the trial judge, Costlow would see the child at his own peril to being reincarcerated. *Page 1