[Cite as *State v. Grier*, 2023-Ohio-170.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

    Appellee

v.

Devonte Grier

    Appellant

Court of Appeals No.  L-21-1263

Trial Court No.  CR0202102023

**<u>DECISION AND JUDGMENT</u>**

Decided:  January 20, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney,
for appellee/cross-appellant.

Autumn D. Adams, for appellant/cross-appellee.

* * * * *

**ZMUDA, J.**

## I.  Introduction

**{¶ 1}** Appellant/cross-appellee, Devonte Grier, appeals the December 6, 2021 judgment of the Lucas County Court of Common pleas convicting him of felonious assault and corrupting another with drugs.  Appellee/Cross-appellant, the State of Ohio, filed a cross-appeal of the trial court's judgment alleging the trial court erred in imposing sentence in its final judgment that was contrary to law.  For the following reasons, we affirm, in part, and reverse, in part, the trial court's judgment.

## A. Facts and Procedural Background

{¶ 2} On July 12, 2021, Grier was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1) and (D), a second-degree felony; one count of rape in violation of R.C. 2907.02(A)(1)(c) and (B), a first-degree felony; one count of rape in violation of R.C. 2907.02(A)(1)(a) and (B), a first-degree felony; and one count of corrupting another with drugs in violation of R.C. 2925.02(A)(1) and (C)(1), a second-degree felony. Appellant appeared for his arraignment on July 14, 2021. At that time, Grier was deemed to be indigent and was appointed counsel. Grier then entered a not guilty plea to all counts and the court scheduled the matter for trial on August 23, 2021.

{¶ 3} Following negotiations with the state, Grier agreed to enter a guilty plea, pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160 (1970), to one count of felonious assault and one count of corrupting another with drugs. Pursuant to the terms of the plea agreement, the state moved to amend Grier's indictment for corrupting another with drugs to a violation of R.C. 2925.02(A)(1) and (C)(2)(a), the violation of which does not mandate the imposition of a prison term upon conviction. The state also agreed to request dismissal of the rape charges at sentencing. Finally, the state agreed to recommend that any prison sentences imposed be served concurrently.

{¶ 4} To permit entry of the plea under the terms of the agreement, the trial court granted the state's motion and amended the indictment as request. The trial court then proceeded with Grier's plea colloquy, including all required advisements made under Crim.R. 11. Grier then entered his guilty plea pursuant to *Alford.* The state then advised

2.

the trial court of what it would have proven had Grier proceeded to trial. Specifically, the state informed the trial court that on October 11, 2020, Grier and his then-girlfriend, C.J. had gathered with some friends at Grier's residence in Toledo, Lucas County, Ohio. That evening, Grier provided C.J. with Xanax pills. The state would have shown that C.J. was frightened after taking the pills. The state also would have shown that Grier had sex with C.J. that evening but that she did not remember it until Grier discussed it with her in the morning.

{¶ 5} On October 12, 2020, Grier forced C.J. to take another Xanax pill. He then proceeded to punch C.J., bang her head against the floor, and attempted to strangle her. Following this assault, Grier forced C.J. to have sex with him again. At approximately 2:30 that afternoon, the friends that had gathered the night before returned to Grier's residence. They found C.J. with bruises from Grier's assault. C.J. insisted that her friends take her to work.

{¶ 6} Upon her arrival, her manager noticed that C.J. was bruised and appeared to be "out of it." C.J.'s brother, who worked with C.J., drove her to their mother's house. C.J.'s mother then took her to the hospital. C.J.'s physical exam revealed that she suffered from bruising, petechiae—ruptured blood vessels resulting in red spots on her skin—around her eyes resulting from the attempted strangulation, and pneumomediastinum—an air bubble in her thoracic cavity outside of her lungs. The state indicated it would show that these injuries arose from Grier's assault. The state also stated that it would have shown that Grier forced C.J. to ingest Xanax, supporting the

3.

corrupting another with drugs offense. Finally, the state would have shown that C.J. was examined by a Sexual Assault Nurse Examiner ("SANE") who was stunned by the amount of C.J.'s bruising. Grier did not object to the state's recitation of facts.[1]

{¶ 7} Following the state's presentation, the trial court accepted Grier's plea and found him guilty. The court ordered Grier to participate in a presentencing investigation and set his sentencing for September 27, 2021.

{¶ 8} On September 14, 2021, Grier sent a letter to the trial court stating that he wished to withdraw his plea. Grier stated that his trial counsel had withheld discovery from him—specifically the radiology records from C.J.'s hospitalization—that showed that C.J. was admitted to the hospital for observation of her pneumomediastinum. Upon reviewing the records along with researching the causes of pneumomediastinum on his own, Grier concluded that the state could not show a causal link between his assault and her condition, providing him a complete defense to the charge of felonious assault that he was unaware of at the time he entered his plea. Grier's letter also alleged that trial counsel would not file a motion to withdraw his plea on these grounds and that he wished to have new counsel appointed for further proceedings.

{¶ 9} At his rescheduled September 27, 2021 sentencing, the trial court informed Grier that it had not, and would not, read his letter because it would constitute an

---

[1] In his sentencing memorandum, Grier conceded that he and C.J. had a physical confrontation but denied that he forced C.J. to take any Xanax. On appeal, however, he makes no argument regarding his conviction for corrupting another with drugs. Therefore, we do not address any claimed error regarding his plea to that offense.

4.

improper ex parte communication.[2] Grier's counsel informed the trial court that he construed the letter as Grier's pro se motion to withdraw his plea. After discussing this matter with counsel, the court denied Grier's motion for new counsel, citing the lack of a motion and the prejudice to Grier of working with new counsel at the late stage of the proceedings. The court then continued the sentencing for two days to permit Grier to discuss the filing of a proper motion with his counsel.

{¶ 10} At the resumed sentencing on September 19, 2021, the trial court referenced receipt of a second letter from Grier, again requesting to withdraw his plea. Grier's counsel then informed the trial court that conversations with Grier resulted in further disagreement regarding the filing of a motion to withdraw. Grier's counsel disputed that he had not provided Grier with all of the evidence he had received and that any attempt to withdraw his plea would likely result in Grier's conviction on all four indicted counts at trial. Grier then informed the court that his counsel had not provided him with copies of C.J.'s medical records until after he had entered his plea. At this time, Grier did not explain why the receipt of the medical records informed his desire to withdraw his plea beyond a blanket statement that not receiving those records prevented him from entering his plea knowingly.

{¶ 11} Due to the lack of a properly filed motion and the need for a hearing should a motion be filed, the trial court again continued Grier's sentencing until October 13,

---

[2] While the trial court did not explicitly inform Grier that it could not consider pro se motions from represented parties, the court did advise Grier that the appropriate way to bring issues before the court was through "what your attorney wants to tell me."

5.

2021. The court informed Grier that if he wished to file a motion to withdraw his plea it must be filed by October 8, 2021. Grier filed his motion, through counsel, requesting that the trial court allow him to withdraw his plea. Counsel's motion stated only that it was filed at Grier's request and attached the relevant portion of Grier's September 14, 2021 letter as an exhibit. The motion offered no argument in favor of withdrawing the plea. Instead, it included only counsel's statement that he did not agree that the motion should be granted but was filing it based on Grier's wishes.

{¶ 12} On October 13, 2021, the trial court held a hearing on the motion to withdraw. Grier's counsel argued, essentially, that the motion lacked merit because he had indeed provided Grier with C.J.'s medical records in advance of his plea. Counsel also argued that withdrawing the plea would expose Grier to a likely guilty finding at trial and a significantly longer prison term than could be imposed under the guilty plea. The trial court then permitted Grier to present his arguments in support of his motion. Grier focused a significant portion of his argument on the fact that the evidence he received from counsel after entering his plea lacked any evidence regarding the rape offenses— charges to which he did not enter a guilty plea. As to the felonious assault charge, Grier stated that had he known that C.J. was admitted to the hospital for pneumomediastinum that he would not have entered his guilty plea because the condition had multiple causes and that the state could not show that it was caused by his assault. Therefore, he argued, the state could not satisfy the "serious physical harm" element of felonious assault under R.C. 2903.11. The state focused its argument on the prejudice it would suffer if the plea

6.

were withdrawn due to issues with producing witnesses for trial and the fact that Grier's counsel was particularly effective in negotiating an advantageous plea on his behalf. The trial court took the motion under advisement and reset the sentencing hearing for November 23, 2021 pending resolution of Grier's motion.

{¶ 13} At the sentencing hearing, the trial court orally informed Grier that it was denying the motion to withdraw with a written opinion to follow. The trial court then ordered Grier to serve an indefinite, non-life prison term of a minimum of 5 years and a maximum of 7 and a half years, pursuant to R.C. 2929.144, on the felonious assault offense. The trial court also ordered Grier to serve a 5-year prison term on the corrupting another with drugs offense. The sentences were ordered to be served concurrently. Lastly, the trial court dismissed the remaining rape counts in accordance with the plea agreement.

{¶ 14} The trial court memorialized its opinion denying Grier's motion to withdraw his plea on November 29, 2021. Grier's sentence was memorialized in a judgment entry filed December 6, 2021.

### B. Assignments of Error

{¶ 15} Grier timely appealed and asserts the following error for our review:

1. It was an abuse of discretion for the trial court to deny Grier's motion to withdraw his guilty plea because ensuring Grier entered a plea knowingly and intelligently was of greater interest.

**{¶ 16}** The state timely cross-appealed and asserts the following error for our review:

1. When the trial court properly informs a defendant of the correct indefinite term required by R.C. 2929.144, but the judgment entry fails to incorporate the indefinite term in the sentencing entry, the judgment entry may be corrected *nunc pro tunc*.

## II. Law and Analysis

### A. Preliminary issues prior to addressing appellant's assigned error.

**{¶ 17}** Prior to addressing the merits of Grier's assigned error, we find it necessary to address two preliminary issues: the scope of Grier's assigned error and a recent Ohio Supreme Court decision regarding appellate review of a presentence motion to withdraw. We begin with the scope of the assigned error.

#### 1. Scope of Grier's assigned error

**{¶ 18}** In this appeal, Grier alleges that his counsel's failure to provide him with all of the evidence produced by the state, prior to entering his guilty plea, rendered his plea unknowingly entered in violation of Crim.R. 11. In his initial letter to the trial court, Grier described this issue as ineffective assistance of counsel. In light of Grier's allegations, his counsel orally requested that the trial court treat the letter as a motion for the appointment of new counsel at his September 27, 2021 sentencing hearing. The trial court treated the letter as such but then denied the motion for new counsel. Grier's counsel continued his representation and eventually filed a motion to withdraw the plea

8.

on Grier's behalf despite his stated position that the motion to withdraw the plea was not in Grier's best interest. In light of that position, Grier's counsel declined to include any authority or argument in support of his motion. Instead, counsel's motion stated that he did not agree that the motion should be filed. Thus, Grier's counsel actually argued against his own client's motion to withdraw in order to defend his effectiveness as counsel. While this conduct is highly problematic and disconcerting, it is not before us on appeal because Grier did not assign error to the effectiveness of his counsel's assistance. Instead, Grier only alleged that the trial court erred in denying his motion to withdraw his plea. As a result, we will only consider Grier's assigned error. *See Jensen v. AdChoice, Inc.,* 6th Dist. Lucas No. L-14-1014, 2014-Ohio-5590, fn. 4 ("[A]ppellate courts must 'determine the appeal on its merits on the assignments of error only, and will not address mere arguments'"). While our review of this issue necessarily includes addressing Grier's relationship with counsel, we consider that issue in the context of the trial court's alleged abuse of discretion in denying his motion rather than as a claim for ineffective assistance of counsel, despite the troubling irregularities that occurred before the trial court.

## 2. Appellate review of the denial of a presentence motion to withdraw a plea.

{¶ 19} Having established the scope of Grier's assigned error, we turn to the Ohio Supreme Court's recent decision in *State v. Barnes,* Slip Opinion No. 2022-Ohio-4486

9.

and address whether it alters our review of the denial of Grier's motion.[3]  Because *Barnes* constitutes the Ohio Supreme Court's first commentary on appellate review of presentencing motions to withdraw since 1992, we find it is appropriate to address whether it impacts our review in the present appeal.

{¶ 20} Grier filed his motion to withdraw pursuant to Crim. R. 32.1 which states, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."  In 1992, the Ohio Supreme Court established overarching standards for the review of a trial court's denial of such a motion stating "a presentence motion to withdraw a guilty plea should be freely and liberally granted."  *State v. Xie,* 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).  However, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." *Id.* at syllabus.  When a defendant files a motion to withdraw their plea, the trial court "must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.*  After conducting the hearing, the trial court exercises its discretion to determine whether to allow the defendant to withdraw the plea. *Id.* at 527.

{¶ 21} The court in *Xie* also recognized, however, that Crim.R. 32.1 provides no guidelines for a trial court to use when ruling on a presentence motion to withdraw. *Id.*

---

[3] We note that on December 29, 2022, the Ohio Supreme Court denied the state's motion for reconsideration. *12/29/22 Case Announcements #3,* 2022-Ohio-4785.

Since that time, Ohio appellate courts have developed a set of factors a trial court may consider when resolving a pre-sentence motion to withdraw. These factors include:

> (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge.

*State v. Dellinger,* 6th Dist. Huron No. H-02-007, 2002-Ohio-4652, ¶ 18-19, citing *State v. Fish,* 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist.1995).[4] Importantly, we note that the Ohio Supreme Court has not explicitly condoned or rejected appellate courts' use of these factors, leaving only the general guidelines established in *Xie* as binding on this court. *See State v. Harmon,* 165 Ohio St.3d 1465, 2021-Ohio-4109, 177 N.E.3d 279, *appeal not accepted* (J. Donnelly, dissenting) ("Our careful examination of the law

---

[4] These factors are identified by various names throughout the state corresponding with each appellate district's own authority adopting their use. For example, the lead opinion in *Barnes* identifies these factors as the "the *Peterseim* and the *Heisa* factors" in light of the authority under which they were adopted in the 8th District Court of Appeals, where Barnes's appeal originated. *Barnes* at ¶ 16-20. This court first adopted the use of these factors in *Dellinger*, citing to their use in *Fish,* and has predominantly identified them as the "*Fish* factors" thereafter. For clarity and consistency with our prior decisions, we will continue to describe these as the "*Fish* factors" in this opinion.

11.

governing presentence motions to withdraw guilty pleas is long overdue; it has been almost thirty years since this court directly addressed the subject. [citing *Xie*]. Given the dearth of guidance from this court over the years, Ohio's appellate courts have cobbled together their own standards for reviewing plea-withdrawal motions, primarily relying on the set of considerations credited to the First District Court of Appeals' decision in [*Fish*].").

{¶ 22} In *Barnes*, the defendant entered a guilty plea to one count of involuntary manslaughter, in exchange for the dismissal of several other charges, related to a shooting incident in Cuyahoga County, Ohio. *State v. Barnes,* Slip Opinion No. 2022-Ohio-4486, at ¶ 6. After his plea, but prior to sentencing, Barnes's counsel provided him with a surveillance video of the incident that he believed showed he acted in self-defense, an argument he advanced throughout the pretrial proceedings. *Id.* at ¶ 7. Barnes's counsel had not previously shared the video with his client as it was marked for "counsel only" pursuant to Crim.R. 16(C). *Id.* Barnes immediately filed a motion to withdraw. *Id.* Both the trial court and the Eighth District Court of Appeals utilized the *Fish* factors to review Barnes's motion, with the appellate court affirming the trial court's denial. *Id.* at ¶ 10, 11.

{¶ 23} The Ohio Supreme Court accepted Barnes's discretionary appeal to determine the following limited proposition of law:

A defendant has a reasonable and legitimate basis to withdraw a guilty plea before sentencing, upon learning of evidence that: (1) was previously

withheld form the defendant; and (2) would have changed the defendant's decision to plead guilty.

*Id.* at ¶ 12.

{¶ 24} On December 15, 2022, the Ohio Supreme Court ruled that the trial court erred when it denied Barnes's motion to withdraw. *Id.* at ¶ 1. In a plurality opinion, the Ohio Supreme Court determined that the *Fish* factors "do not apply" in Barnes's situation and that "when a defendant discovers evidence that would have affected his decision to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing." *Id.* at ¶ 24.

{¶ 25} In her concurring opinion, Justice Brunner stated she concurred in the reversal but would have done so by clarifying that the *Fish* factors should not be used to determine a presentence motion to withdraw. *Id.* at ¶ 41. In his dissent, Justice Fischer found that Barnes's appeal "presents neither a constitutional question nor a matter of great public interest" and should have been dismissed as being improvidently accepted. *Id.* at ¶ 43 (Fischer, J., dissenting). We note that because the court did not reach a majority as to when, or if, the *Fish* factors apply to appellate review of presentence motions to withdraw, the plurality decision is not binding on this court. *Stykes v. Colerain Twnship.,* 2019-Ohio-3937, 145 N.E.3d 1123, ¶ 10, fn. 1 (1st Dist.), citing *State v. Preztak,* 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254 (8th Dist.).

{¶ 26} In our continuing effort to ensure that the appropriate legal standards are being applied by this court, however, we find that any Ohio Supreme Court decision that

13.

arguably impacts an issue before us warrants careful review. As a result, we are compelled to consider the impact of *Barnes* on our analysis before moving forward with our review of Grier's assigned error. We find that in light of its lack of clarification as to when the *Fish* factors "do not apply," and the distinct factual scenario addressed in *Barnes*—that is, the post-plea discovery of information that would have entirely altered Barnes's trial strategy rather as compared to Grier's discovery of information tangentially related to his admitted assault of C.J.—that *Barnes* does not alter our use of the *Fish* factors to review of the denial of Grier's motion.[5] Having established the applicable standard, we turn to our analysis of Grier's assigned error.

**B.    The trial court did not abuse its discretion in denying Grier's motion to withdraw.**

{¶ 27} Application of the *Fish* factors does not require this court to simply tabulate whether more factors weigh in favor of granting or denying the motion to withdraw. *Hartman* at ¶ 14. Instead, "[c]onsideration of the factors is a balancing test, and no one factor is conclusive." *Hartman* at ¶ 14, citing *State v. Zimmerman*, 10th Dist.

---

[5] In comparing the material difference between the facts raised by Grier and those in *Barnes*, we find that Barnes was able to identify actual evidence that reasonably supported his self-defense claim, while Grier merely stated that he had learned, subsequent to his plea, the name of the condition his victim suffered from as a result of his assault and that that condition can have other causes in addition to trauma. We cannot say that Grier's discovery of minor details related to his victim's injuries, particularly in light of the nature of the remaining evidence against him, would have reasonably supported any claimed defense to the felonious assault charge. Grier's "new information" falls woefully below any standard established in *Barnes* to show that the strength of the newly discovered evidence supersedes this court's use of the *Fish* factors to review appellant's assigned error.

14.

Franklin No. 09AP-866, 2010-Ohio-4087, ¶ 13. "In reviewing these factors, it must be remembered that the ultimate question to be answered by the trial court is 'whether there is a reasonable and legitimate basis for the withdrawal of the plea,' * * * and the ultimate question to be answered by the court of appeals is whether the trial court abused its discretion in making this determination." *Id.*, citing *State v. Burns*, 12th Dist. Butler Nos. CA2004-07-084, 2005-Ohio-5290, ¶ 25, quoting *Xie*. To determine whether Grier had a reasonable and legitimate basis on which to withdraw his plea, we review the facts of this case as viewed under those factors.

### a. Grier's lack of complete defense or showing he was perhaps not guilty weighs against withdrawal of his plea.

{¶ 28} The 9th *Fish* factor requires this court to consider whether Grier was perhaps not guilty or had a complete defense to the charge. *Dellinger,* 6th Dist. Huron No. H-02-007, 2002-Ohio-4652, at ¶ 18-19. In reviewing this factor, we are mindful that in ruling on a motion to withdraw a plea, the trial court should not determine the likelihood of success of a claimed defense. *Oregon v. Gaughan,* 6th Dist. Lucas No. L-19-1084, 2020-Ohio-4092. Instead, the question for the trial court is whether "the evidence suggests that the defendant may not be guilty of the offense, even if other factors do not weigh in favor of the withdrawal." *Id.* at ¶ 23. When there is *significant potential* for a defense to a charge which the defendant was unaware of at the time they entered their plea, that fact constitutes "a substantial basis upon which to base a pre-sentence motion to withdraw a guilty plea[.]" *Id.* (emphasis added). "[A] defendant is not

required to prove such a defense at the time of the motion to withdraw; rather they must show that the claimed defense provides a *reasonable and legitimate basis* on which to withdraw the plea. *State v. Hartman*, 6th Dist. Huron No. H-17-014, 2018-Ohio-4452, ¶ 13 (emphasis added). "Identifying evidence which supports a potential defense in a motion to withdraw constitutes more than "a mere change of heart" and weighs in favor of granting the motion. *Gaughan* at ¶ 23. Grier argues that his motion to withdraw should have been granted because he had significant potential for a defense to the felonious assault charge that he was unaware of at the time he entered his plea. We disagree.

{¶ 29} In order to prove Grier committed a felonious assault in violation of R.C. 2903.11(A) it must show that Grier caused "serious physical harm to another." R.C.2901.01(A)(5) defines serious physical harm, in relevant part, as:

(a) Any mental illness or condition of such gravity as would normally require hospitalization * * *; [or]

(b) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement[.]

Grier argues that the evidence supplied to him after he had entered his plea—C.J.'s medical records—show that he has a complete defense to the felonious assault charge because there is more than one potential cause for pneumomediastinum. Grier argues that the records reveal that pneumomediastinum was the only reason for C.J.'s hospitalization and that because there were multiple potential causes for that condition,

16.

including C.J.'s drug use, that the state cannot show that it was the result of his assault.  If the state was unable to show beyond a reasonable doubt that his assault caused C.J.'s pneumomediastinum, he continues, then it could not have proven the serious physical harm element of the offense, thus providing him with a complete defense had he not entered his guilty plea.

{¶ 30} Grier's argument lacks merit for several reasons.  We note that Grier does not dispute that he assaulted C.J.  Instead, he argues only that the state could not have shown that the assault resulted in serious physical harm had he gone to trial.  This conclusion ignores both the temporal relationship between his assault and C.J.'s hospitalization as well as the evidence that C.J. also suffered temporary, serious disfigurement as a result of his assault.

{¶ 31} As to the cause of C.J.'s hospitalization, the trial court found that "[t]he record before the Court does not show a blatant, intervening cause which may have led to the alleged victim's hospital admission, and it does not obviously exclude Defendant as having caused the alleged-victim's injuries/medical condition."  In light of the timing between his admitted assault and C.J.'s hospitalization, we find that the record supports the trial court's conclusion that simply because pneumomediastinum *can* arise from multiple causes, Grier did not introduce evidence to show that he was not the cause of C.J.'s condition.

{¶ 32} Moreover, Grier makes no effort to explain how C.J.'s medical records would have reasonably allowed him to present a complete defense at trial in regard to

17.

C.J.'s bruising and petechiae that resulted from his assault. As the state notes in its brief, Ohio courts have held that a victim's bruising has been held sufficient to show serious physical harm as a temporary, serious disfigurement. *See State v. Crossty,* 2017-Ohio-8382, 99 N.E.3d 1048, ¶ 23 (1st Dist.), citing *State v. Jarrell*, 4th Dist. Scioto No. 08CA3250, 2009-Ohio-3753, 2009 WL 2332087, ¶ 14, citing *State v. Worrell*, 10th Dist. Franklin No. 04AP-410, 2005-Ohio-1521, 2005 WL 736529, ¶ 47–51, *rev'd on other grounds*, *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174 (extensive bruising on the victim's lower back and hip for which she sought medical treatment); *State v. Krull*, 154 Ohio App.3d 219, 2003-Ohio-4611, 796 N.E.2d 979, ¶ 21 (12th Dist.) (extensive bruising on the victim's buttocks and legs, and a bloody cut). At Grier's plea hearing, the state indicated it would show at trial that C.J. had "bruises all over her body." The bruising was so extensive that the SANE nurse conducting C.J.'s exam was "stunned" at the amount of bruising. Grier provides no argument to support a reasonable potential defense to the "serious physical harm" element of his felonious assault conviction that would weigh in favor of withdrawing his plea.

{¶ 33} In sum, Grier's argument on appeal is that the trial court abused its discretion by not weighing his potential defense of alternate causes for C.J.'s hospitalization more heavily in favor of granting the withdraw. However, Grier fails to identify a *reasonable and legitimate basis* for this defense. Additionally, Grier's singular focus on potential other causes of C.J.'s pneumomediastinum as the support for the

18.

state's inability to show the "serious physical harm" element ignores C.J.'s other injuries supporting that element. Grier offered no basis unknown to him at the time of his plea or, in fact, any basis at all, to show that he had a complete defense to that aspect of his felonious assault charge. As a result, the trial court did not abuse its discretion in finding that this factor weighed against Grier's request to withdraw his plea.

> *b. Any alleged prejudice the state would suffer had appellant been permitted to withdraw his plea does not weigh in favor of or against the granting of the motion.*

{¶ 34} In his second argument, Grier alleges that the trial court abused its discretion in finding that the state would be prejudiced should he be allowed to withdraw his plea. The state argues that it would suffer prejudice to its prosecution of this case if the plea was withdrawn because the timing of the trial would likely coincide with the maternity leave of one of its witnesses,[6] that witness memories would fade if the trial were delayed to accommodate that witness' return, and that C.J. might be reluctant to "re-enter the trial process with all its emotional freight" after having been previously informed that the matter was resolved. Grier argues that the delay of his trial to accommodate witnesses does not prejudice the state as his trial could not have taken place in the short term due to COVID-related restrictions pushing all trials into 2022. Grier also categorizes C.J.'s reluctance to testify at trial as her being uncooperative. He

---

[6] The state does not specify which witness would be unavailable or when they would return from their leave.

19.

argues that the state's inability to produce the victim at trial should not be weighed against the granting of his motion to withdraw.

{¶ 35} Having reviewed the record, we find that this factor should not have weighed in favor of granting or denying Grier's motion to withdraw. The parties' arguments on this factor are based on assumptions regarding the availability of witnesses. Whether a trial would have been rescheduled during an unnamed witness's maternity leave, without more information, does not allow this court to determine what prejudice the state would suffer as a result of the requested withdraw, if any. More importantly, there is simply no evidence in the record indicating whether C.J.'s speculative refusal to participate in further proceedings, would be the result of her being uncooperative, as Grier alleges, or as a result of her wishing to avoid the trauma of relitigating a matter she believed was closed, as argued by the state. The pure speculation by each party as to whether C.J. would voluntarily appear to testify, let alone the basis on which she might try to avoid that testimony, is simply insufficient to allow this court to determine whether or not the state would be prejudiced by the withdrawal of Grier's plea. As a result, we find that this factor is neutral in determining whether the trial court erred in denying Grier's motion to withdraw.

> c. *The trial court's weighing of the remaining factors did not result in an abuse of its discretion.*

{¶ 36} Grier's brief does not allege any error in the trial court's consideration of the remaining factors in denying his motion to withdraw. Our review of the record shows

20.

that Grier received a complete and extensive Crim.R. 11 plea hearing. We also find that his counsel's representation at the time of his plea weighs against granting the motion to withdraw, particularly in light of achieving the dismissal of two first-degree felonies and obtaining an amendment to the corrupting another with drugs offense to avoid violation of a statutory section with a mandatory prison term. Additionally, the trial court conducted an extensive Crim.R. 11 plea colloquy to ensure that Grier understood the parameters of the plea agreement, the nature of the charges, and the potential sentences. We also find that the trial court gave full and fair consideration to Grier's motion, having sought to determine the precise nature of Grier's arguments and addressing each of these in its denial of that motion. The trial court found that the timing of Grier's motion was not unreasonable and weighed this factor in his favor.

{¶ 37} It is only the fourth factor—the extent of the hearing on the motion to withdraw—that we find warrants additional discussion. We previously noted that Grier sought the appointment of new counsel when his trial counsel initially declined to file the motion to withdraw the plea. The trial court denied that motion. Then, at the October 13, 2021 hearing on Grier's motion to withdraw, Grier's counsel actually argued against the motion that he filed on behalf of his client. Grier, effectively proceeding pro se despite having been appointed counsel, was left to make his own arguments in support of the motion to withdraw while facing the opposition of both his own counsel and the state. This scenario undoubtedly negatively impacted the extent of the hearing on the motion to withdraw and the trial court should have weighed this factor in Grier's favor.

21.

{¶ 38} While we find that the trial court improperly weighed this factor in favor of denying the motion to withdraw, this alone does not constitute an abuse of discretion in the trial court's judgment. The trial court plainly articulated in its judgment entry that it considered each of Grier's arguments in favor of granting his motion to withdraw despite any impediment to his presenting those arguments at his hearing. The trial court's decision ultimately relied primarily on weighing the 2nd, 7th, and 9th factors against granting Grier's motion. The trial court's decision specifically references Grier's undisputed knowledge of the timing of C.J.'s hospitalization following his assault. The court also noted that Grier did not dispute his awareness of the nature of C.J.'s medical records and the diagnosis contained therein, even if he had not seen the actual records prior to his plea.

### d. Balancing of the factors.

{¶ 39} To show that the trial court abused its discretion in denying his motion, Grier must present evidence that shows there is a "significant potential for a defense to a charge which [he] was unaware at the time [he] entered his plea[.]" *Gaughan,* 6th Dist. Lucas No. L-19-1084, 2020-Ohio-4092, at ¶ 23. "[S]imply claiming to have a defense, without more, has been held to be insufficient to reverse a trial court's discretion in denying a motion to withdraw." *Id.* at ¶ 31, citing *State v. Jenkins,* 9th Dist. Summit No. 22008, 2005-Ohio-11, ¶ 9. Having considered the record before and applying the *Fish* factors to that record, we find that Grier failed to meet this burden. For these reasons, we find Grier's single assignment of error not well-taken.

22.

**B.      The trial court erred in failing to include the indefinite portion of Grier's sentence.**

{¶ 40} In its cross-appeal, the state alleges that the trial court erred when it failed to accurately include state Grier's sentence in its December 6, 2021 judgment entry. Specifically, the state argues that the trial court failed to include the maximum portion of Grier's indefinite prison term in its final judgment entry. The state requests that we remand this matter to the trial court so that it may issue a *nunc pro tunc* order amending its judgment entry to reflect the sentence imposed. Grier did not respond to the state's cross-appeal.

{¶ 41} We review felony sentences under R.C. 2953.08(G)(2). *State v. Goings*, 6th Dist. Lucas No. L-13-1103, 2014-Ohio-2322, ¶ 20. We may increase, modify, or vacate and remand a judgment only if we clearly and convincingly find either of the following: "(a) the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant" or "(b) the sentence is otherwise contrary to law." *State v. Yeager*, 6th Dist. Sandusky No. S-15-025, 2016-Ohio-4759, ¶ 7, citing R.C. 2953.08(G)(2). Appellant bears the burden of identifying clear and convincing evidence the sentence imposed was contrary to law. *State v. Moore*, 12th Dist. Butler No. CA2007-03-060, 2008-Ohio-1477, ¶ 12, citing *State v. Costlow*, 8th Dist. Cuyahoga No. 89501, 2008-Ohio-1097, ¶ 15.

23.

{¶ 42} Here, Grier was found guilty of felonious assault, a second degree felony. As a result, he was subject to the imposition of a non-life, indefinite prison term under R.C. 2929.14(A)(2)(a)—Ohio's Reagan Tokes Law. It is undisputed that the trial court properly imposed a prison term in accordance with the statute at Grier's sentencing. However, when the trial court memorialized its sentence in its judgment entry, it omitted the maximum term of Grier's indefinite sentence. The failure to include the maximum term imposed under R.C. 2929.14(A)(2)(a) renders a sentence contrary to law. *See State v. Gifford,* 6th Dist. Lucas No. L-20-1152, 2021-Ohio-2967, ¶ 15 (holding that the improper application of indefinite sentencing under R.C. 2929.144 renders a sentence contrary to law). As a result, despite imposing the correct sentence, the trial court erred in failing to include the entirety of Grier's indefinite sentence in its judgment entry.

{¶ 43} When a judgment entry fails to record a valid judgment imposed on the record by the court, the proper remedy is the issuance of a *nunc pro tunc* order correcting the error. *See In re. Doe,* 149 Ohio App.3d 717, 2002-Ohio-4470, 778 N.E.2d 1053, ¶ 61 (6th Dist.) ("*Nunc pro tunc* orders are employed to make the record speak the truth, and the function of such entries is the correction of judgments rendered to the extent that they fail to record or improperly record, the judgment rendered by the court."). For these reasons, we find the state's assignment of error well-taken and we remand this matter to the trial court for the issuance of a *nunc pro tunc* order correcting this error.

24.

### III. Conclusion

{¶ 44} We find Grier's assignment of error not well-taken. We find the state's assignment of error well-taken. Therefore, we affirm, in part, and reverse, in part, the December 6, 2021 judgment of the Lucas County Court of Common Pleas. We remand this matter for the limited purpose of issuing a *nunc pro tunc* order in accordance with this decision.

{¶ 45} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed in part,<br>
Reversed in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.          _____
                                              JUDGE
Christine E. Mayle, J.

Gene A. Zmuda, J.                 _____
CONCUR.                                       JUDGE

                                  _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.