**[Cite as *State v. Lopez*, 2023-Ohio-1924.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                         Court of Appeals No.  WD-22-027

       Appellee                                     Trial Court No.  2019CR0057

v.

Nelson Lopez, Jr.                                   **DECISION AND JUDGMENT**

       Appellant                                    Decided:  June 9, 2023

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This is a delayed appeal by appellant, Nelson Lopez, Jr., from the March 14, 2022 judgment of the Wood County Court of Common Pleas.  For the reasons that follow, we affirm the trial court's judgment.

## Assignments of Error

{¶ 2} Appellant sets forth the following assignments of error:

I. The trial court abused its discretion and erred to the prejudice of Appellant by denying a motion to withdraw his plea prior to sentencing.

II. Appellant received ineffective assistance of counsel in violation of his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

## Background

{¶ 3} On February 5, 2019, appellant was riding in a car driven by his son, Nelson Lopez, III, when the vehicle was stopped by police and searched. During the search, white powder was found, which was tested and found to be a chemical known as ANPP, a precursor for fentanyl and/or heroin. As a result, both appellant and his son were indicted.

{¶ 4} With respect to appellant, on April 4, 2019, he was indicted on one count of trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(2) and (C)(9)(h), a felony of the first degree (Count One), and one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A) and (C)(11)(g) (Count Two). Both counts contained the following specifications: a one-year firearm specification under R.C. 2941.141(A); a major drug offender specifications under R.C. 2941.1410(B),

2.

for fentanyl; two specifications for forfeiture of a cell phone in a drug case under R.C. 2941.1417(A); a specification for forfeiture of a gun in a drug case under R.C. 2941.1417(A); and, a specification for the forfeiture of money in a drug case under R.C. 2941.1417(A). In addition, count one contained a major drug offender specification under R.C. 2941.1410(A). Appellant initially entered a plea of not guilty.

*Change of Plea Hearing*

{¶ 5} On October 8, 2019, appellant pled guilty to an amended Count One, trafficking in a fentanyl-related compound, a felony of the first degree, in violation of R.C. 2925.03(A)(2) and (C)(9)(h), and an amended Count Two, possession of a fentanyl-related compound, a felony of the first degree, both with forfeiture specifications of property, in violation of R.C. 2925.11(A) and (C)(11)(g). Appellant agreed to forfeit the cell phones and cash. The state dismissed the major drug offender and firearm specifications, and stipulated that Counts One and Two would merge for purposes of sentencing.

{¶ 6} With respect to the sentence, the state recommended "the mandatory 11 year prison term"[1] and appellant's attorney stated that was both his, and appellant's

---

[1] Pursuant to R.C. 2925.03(C)(9)(h), "[i]f the amount of the drug involved equals or exceeds one thousand unit doses or equals or exceeds one hundred grams and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in a fentanyl-related compound is a felony of the first degree, the offender is a major drug offender, and *the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree*." (Emphasis added.) At the time of the offense, the maximum prison term for a felony of the first degree was 11 years. R.C. 2929.14(A)(1).

3.

understanding of the agreement as well. The court then had the following discussion with appellant:

> THE COURT: * * * [Appellant], is that - - as Mr. Rost said, is that your understanding of the agreement?
>
> [APPELLANT]: Yes, sir.
>
> THE COURT: And you understand then that the possible penalties for Count 1 and for Count 2 are a mandatory sentence of from - - is there a range or is this a mandatory 11?
>
> [PROSECUTOR]: Judge, it's a mandatory maximum sentence of 11 years.
>
> THE COURT: Okay. Do you understand that?
>
> [APPELLANT]: Yes, sir.

{¶ 7} Appellant also stated that he went through the plea papers with his attorney and his attorney answered any questions he had. The plea signed by appellant states that there is an 11 year mandatory prison term.

{¶ 8} The prosecutor then described the evidence that would have been presented at trial as follows:

> Had the matter proceeded to trial, the State would have called the relevant witnesses and submitted the pertinent documentary evidence to prove each and every element of the offenses beyond a reasonable doubt.

4.

More specifically, the State would have called an Ohio State Highway trooper, Garrett Lawson, who would have testified that on or about February 5th, 2019, he was traveling on Interstate 80 in Wood County, Ohio. At that time, he noticed that he was gaining very quickly on a silver pickup truck, later identified as a Ford F-150. He noticed that the vehicle was traveling in the right-hand lane at approximately 59 miles per hour in a 70 mile per hour zone.

Following that, he continued following the vehicle when he noticed it commit a traffic violation. More specifically, he noted that it made a pass around a trailer - - a truck trailer that had three trailers on it - - pulling in front of it - - in front of that truck - - in an unsafe manner with approximately one vehicle length between the truck and the tractor- trailer.

At that time, the officer engaged his overhead lights and initiated a traffic stop prior to the Wyandot Service Plaza. The driver pulled into that service plaza where Trooper Lawson made contact with the driver, who was later identified as Nelson Lopez, III.

At that time, they - - Mr. Lopez explained that the vehicle was rented and he could not produce a rental agreement.

5.

The officer inquired as to whether the driver was sleepy or impaired - - given the change in the driving behavior, particularly the slow speed and then later speeding up.

Furthermore, the driver couldn't give a clear answer as to where they were headed.

Ultimately, the trooper asked Mr. Lopez, III to step out of the vehicle. At that time, Mr. Lopez, despite being asked twice - - regarding any weapons in the vehicle - - Mr. Lopez denied that there were any weapons in the vehicle. But he did notice that he had a concealed carry license out of Florida. The trooper, again, asked him whether he had a weapon in the car, at which time Mr. Lopez said that he did, in fact, have one in the car.

Thereafter, the trooper engaged in a Terry pat-down of Mr. Lopez, III, at which time a weapon was found on his person.

Following that, the trooper, who was at that point joined by Trooper Manley and Agent Payne of the Border Patrol, asked Mr. Lopez, Jr. to exit the car. At that time, they conducted a probable cause search of the car. That probable cause search revealed a black insulated bag that contained two items that were wrapped as if they were Lunchables - - the lunch thing made for kids. They noted that there were unusually heavy. So opening it,

they noted a white powder that seemed to be contained therein.  At that time, the trooper suspected that it was, in fact, cocaine.

Those two items - - the two Lunchables and packaging that was contained therein - - were sent to the Ohio State Highway Patrol testing lab in Columbus where they confirmed that the chemical therein was a chemical known as ANPP.

Furthermore, the State would have called those experts from that lab to testify as to the fact that that is a precursor for Fentanyl and/or Heroin, as well as it meets the statutory definition of a Fentanyl-Related Compound. Further, they would testify that the amount was 1,993 grams.

The defendant's conduct was without legal justification.

{¶ 9} Attorney Rost stated that appellant did not contest those facts, and that those facts would be sufficient to support a conviction for the amended charges.

*Failure to Appear*

{¶ 10} Sentencing was scheduled for December 10, 2019; however, appellant did not appear and a nationwide warrant was issued for him.  The arrest warrant was served on July 10, 2021.

*Motion to Withdraw Plea*

{¶ 11} Appellant, represented by attorney Ronnie Wingate, filed a motion to withdraw his guilty plea on September 3, 2021, and subsequently sought leave to

7.

supplement his motion to withdraw plea with his affidavit, which stated, in relevant part, that it was his understanding that his sentence would be mandatory in the range of 3 to 11 years, based on an email from Rost that he received prior to his plea.[2]

{¶ 12} A hearing was held on the motion to withdraw on February 11, 2022, at which Rost testified. Relevant to this motion, Rost explained that, in exchange for appellant's plea deal, the state offered appellant's son "a much reduced charge and essentially one year in prison."

{¶ 13} With respect to whether appellant understood that he would be sentenced to the mandatory 11 years, Rost acknowledged that in an email dated September 24, 2019, he stated that the potential sentence would be 3 to 11 years; however, after that email, Rost correctly advised appellant that his sentence would be 11 years maximum mandatory. He testified that, on the day of the plea, he first met with appellant and went through the plea form. When asked whether there was any question in his mind that appellant understood the nature of the penalty that was going to be imposed, Rost responded that he believed appellant "understood the potential penalties for each of the charges as indicted, both for himself and for Lopez, III. And I believe he fully understood what the nature of the plea was, which he entered into in October of 2019."

{¶ 14} According to Rost, appellant did not express any difficulties understanding English.

---

[2] Appellant also filed two pro se motions seeking to withdraw his plea, however, these motions were both subsequently withdrawn.

8.

{¶ 15} The court denied appellant's motion to withdraw his plea on February 16, 2022.

{¶ 16} Appellant was sentenced on March 11, 2022. Counts One and Two were merged for sentencing, and the state elected to proceed with sentencing on Count One. Appellant was sentenced to a mandatory maximum sentence of 11 years. Additionally, pursuant to the forfeiture specifications, cell phones, a gun, and cash were forfeited.

{¶ 17} Appellant was also ordered to pay a mandatory fine of $10,000, which the court ordered stayed until appellant is released from prison. Prior to sentencing, Wingate requested that the court waive the fine. The court imposed a fine, but stated "if you can submit to me something in writing as to [appellant's] indigency, then I'll waive that $10,000 mandatory fine." A written request was not made.

{¶ 18} Appellant appealed.[3]

### First Assignment of Error

{¶ 19} In this assignment of error, appellant contends that the trial court erred in not granting his presentence motion to withdraw his plea.

*Applicable Law*

{¶ 20} Pursuant to Crim.R. 32.1, "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court

---

[3] Appellant's original appeal was untimely and therefore dismissed. Appellant then filed a motion for leave to file a delayed appeal, which we granted.

after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 21} While a "presentence motion to withdraw a guilty plea should be freely and liberally granted," a defendant does not have "an 'absolute right' to withdraw his or her plea, even when a motion to withdraw is made before sentencing." *State v. Barnes*, Slip Opinion No. 2022-Ohio-4486, ¶ 13, quoting *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992).

{¶ 22} Prior to ruling on a presentence motion to withdraw a plea, "the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawing the plea." *Id.*, citing *Xie*. We review the trial court's decision for abuse of discretion. *Id.*

*Factors to Consider*

{¶ 23} While the Ohio Supreme Court has set forth the above general guidelines with regard to a motion to withdraw a plea prior to sentencing, it has not provided more specific guidance for courts to use when ruling on such a motion. However, the appellate courts have developed a set of factors a trial court can consider when resolving a presentence motion to withdraw, which include:

> (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to

10.

withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. [4]

*State v. Grier*, 6th Dist. Lucas No. L-21-1263, 2023-Ohio-207, ¶ 21.  After consideration of these factors, we do not find that the trial court abused its discretion when it denied appellant's motion to withdraw his plea.

{¶ 24} Appellant does not take issue with many of these factors.  He only requests we consider the first, second, seventh, eighth and ninth factors, and he specifically acknowledges that that the plea hearing "comported with the requirements of Ohio Crim.R. 11."  The state, in turn, argues that the eighth factor (whether the defendant understood the nature of the charges) is the only applicable factor.

{¶ 25} We limit our consideration to those factors that the parties have argued apply.

{¶ 26} With respect to the first factor, whether the state was prejudiced, the trial court found "substantial factors" that would prejudice the state, and explained that the

---

[4] Recently, in *Barnes*, Slip Opinion No. 2022-Ohio-4486, the Ohio Supreme Court concluded that these factors did not apply in that case, where "a defendant discovers evidence that would have affected his decision to plead guilty." *Id*. at ¶ 24.  We have since considered the applicability of these factors post-*Barnes* and have concluded that when faced with a factually distinct scenario from that in *Barnes*, we would continue to apply these factors.  *State v. Grier*, 6th Dist. Lucas No. L-21-1263, 2023-Ohio-207, ¶ 26.

11.

state had argued that it could not bring any additional charges against appellant's son, and that appellant could now blame his son for the alleged crimes. We agree that it is prejudicial that appellant's plea was made in conjunction with a plea to a lighter sentence given to his son.

{¶ 27} With regard to factors two, seven, and eight, appellant relies upon the email he received from Rost and argues that he "did not understand that the only sentence that could be statutorily imposed by the court without discretion was an eleven-year mandatory term." Appellant acknowledges that he was properly advised at his plea hearing, however, he claims he was confused and uncertain and relied on the information he had been given by his attorney. The trial court found this to not be credible, and we do not find this to be an abuse of discretion. Attorney Rost testified that after sending the email, he told appellant that the sentence would be 11 years mandatory. Further, this information was in the plea form signed by appellant, and, at the plea hearing, the court notified appellant of this mandatory sentence and appellant stated that he understood that that would be his sentence.

{¶ 28} Lastly, regarding the ninth factor, whether appellant is not guilty, or had a defense to the charge, we note that appellant has not raised any applicable defense. He has merely stated that "motion practice * * * would be available."

**{¶ 29}** After considering these factors, and the parties' arguments, we do not find that the trial court abused its discretion in denying appellant's motion to withdraw his plea. Accordingly, appellant's first assignment of error is found not well-taken.

**Second Assignment of Error**

**{¶ 30}** Appellant maintains that he received ineffective assistance from Rost when Rost misstated the law with respect to the length of his sentence in the September 24, 2019 email. Additionally, appellant contends that Wingate was ineffective in that he did not contest the $10,000 fine or file a motion requesting that the court waive it.

**{¶ 31}** "[I]n order to prevail on an ineffective assistance of counsel claim, it must be demonstrated both that trial counsel's performance fell below an objective standard of reasonableness, and that, but for the established deficiency, the outcome of the case would have been different." *State v. Brown*, 6th Dist. Wood Nos. WD-21-002 and WD-21-003, 2021-Ohio-3762, ¶ 22, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because 'effective assistance' may involve different approaches or strategies, our scrutiny of trial counsel's performance 'must be highly deferential' with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Whitman*, 2021-Ohio-4510, 182 N.E.3d 506, ¶ 51 (6th Dist.), quoting *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

13.

*Ineffective Assistance Regarding Guilty Plea*

**{¶ 32}** Appellant has raised two claims of ineffective assistance of counsel. The first is based upon the September 24, 2019 email he received from Rost misstating his possible sentence.

**{¶ 33}** "In order to satisfy the 'prejudice' element for an ineffective-assistance claim following a guilty plea, '[appellant] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *State v. Mejia*, 2020-Ohio-6870, 164 N.E.3d 1177, ¶ 12 (6th Dist.), quoting *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 89.

**{¶ 34}** Here, we cannot find the prejudice element has been satisfied. After receiving the email, appellant was informed in the plea agreement, and in open court, that he would be sentenced to 11 years, and even the incorrect statement in the email apprised appellant that 11 years in prison was a possible sentence. Moreover, this sentence was entered into as consideration for appellant's son getting a much lighter sentence. Therefore, we do not find that, without the September 24, 2019 email, there is a reasonable probability that appellant would not have pled guilty.

**{¶ 35}** We also note that appellant does not dispute that he received a proper Crim.R. 11 hearing. Courts have found that "where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the

14.

likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel." *State v. Glass*, 10th Dist. Franklin No. 04AP-967, 2006-Ohio-229, ¶ 34, quoting *Wiant v. United States*, No. 2:04-CV-256 (S.D.Ohio 2005).

{¶ 36} We therefore do not find that appellant has established ineffective assistance of counsel with respect to his guilty plea.

*Ineffective Assistance Regarding Fine*

{¶ 37} Appellant also alleges that Wingate was ineffective in failing to file a motion to waive the $10,000 fine, or an affidavit of indigency. As an attorney is presumed competent, appellant bears the burden of proving that his counsel was ineffective. *State v. Beard*, 6th Dist. Sandusky No. S-19-018, 2020-Ohio-3393, ¶ 5.

{¶ 38} The "[f]ailure to file the R.C. 2929.18(B)(1) affidavit of indigency constitutes ineffective assistance of counsel which can be addressed on direct appeal, rather than in postconviction relief, if there is sufficient evidence in the record demonstrating that the trial court would have found the offender was indigent and unable to pay the fine." *Id*. at ¶ 7. Here, appellant has not provided the court with any evidence to support a conclusion that the trial court would have found him indigent and unable to pay the fine. Therefore, we do not find that he has established ineffective assistance of counsel with respect to the failure to file an affidavit of indigency.

{¶ 39} Accordingly, we find appellant's second assignment of error not well-taken.

## Conclusion

**{¶ 40}** The judgment of the Wood County Court of Common Pleas is affirmed.

Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                     _____
                                                                    JUDGE
Gene A. Zmuda, J.

                                                         _____
Myron C. Duhart, P.J.                          JUDGE
CONCUR.

                                                         _____
                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.